IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID BUREN WILSON, TRUSTEE, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HOUSTON COMMUNITY COLLEGE | § | |
| SYSTEM, CAROLYN EVANS-SHABAZZ, | § | |
| CHAIR, PRETTA VANDIBLE | § | C.A. No.:_____ |
| STALLWORTH, VICE CHAIR, ZEPH | § | |
| CAPO, SECRETARY, JOHN HANSEN, | § | |
| TRUSTEE, ADRIANA TAMEZ, | § | |
| TRUSTEE, ROBERT GLASER, TRUSTEE, | § | |
| NEETA SANE, TRUSTEE, and EVA | § | |
| LOREDO, TRUSTEE | § | |
| | § | |
|    Defendants. | § | |

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Plaintiffs Original Petition (October 10, 2017) |
| 2 | Defendants' Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer (November 17, 2017) |
| 3 | Defendants' First Amended Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer (November 30, 2017) |
| 4 | Plaintiff's First Amended Original Petition (February 7, 2018) |
| 5 | Defendants' Corrected Second Amended Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer (March 8, 2018) |
| 6 | Docket Control Order (February 7, 2018) |
| 7 | Order Denying Transfer (October 13, 2017) |
| 8 | Docket Sheet in Cause No. 2017-67357 |
| 9 | List of Parties and Counsel |

4824-6579-9774, v. 1

EXHIBIT 1

CAUSE NO. _ _ _ _ _ _ _ _

| | | |
|---|---|---|
| DAVID BUREN WILSON, TRUSTEE | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| V. | § | |
| | § | |
| HOUSTON COMMUNITY COLLEGE | § | |
| SYSTEMS, EVA LOREDO, CHAIR, | § | |
| CAROLYN EVANS-SHABAZZ, VICE | § | |
| CHAIR, JOHN HANSEN, TRUSTEE | § | |
| ADRIANA TAMEZ, TRUSTEE | § | |
| ROBERT GLASER, TRUSTEE | § | JUDICIAL DISTRICT |
| NEEETA SANE, TRUSTEE | § | |
| CI IRISTOPHER OLIVER, TRUSTEE and | § | |
| ZEPI I CAPO, TRUSTEE | § | |
| Defendants | § | HARRIS COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION

TO TI IE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DAVID BUREN WILSON, Plaintiff in the above styled and

numbered cause and files this his Original Petition and respectfully shows:

### I. Discovery

1.     Discovery may be conducted under level one.

### II. Parties and Service

2.     **DAVID WILSON** is a natural person and Trustee for Houston Community

College Systems. Service may be affect though the undersigned attorney.

3.     **HOUSTON COMMUNITY COLLEGE SYSTEMS** is a political subdivision

and may be served by and through its chancellor, Cesar Maldonado. Service may be

affected anywhere he may be found.

4.     **EVA LOREDO, TRUSTEE AND CHAIR** for Houston Community College

Systems. Service may be affected anywhere she may be found.

5.     **CAROLYN EVANS-SHABAZZ, TRUSTEE AND VICE CHAIR** for Houston

Community College Systems. Service may be affected anywhere she may be found.

6. **.JOHN HANSEN, TRUSTEE** for Houston Community College Systems. Service may be affected anywhere he may be found.

7. **ADRIANA TAMEZ, TRUSTEE** for Houston Community College Systems. Service may be affected anywhere she may be found.

8. **ROBERT GLASER, TRUSTEE** for Houston Community College Systems. Service may be affected anywhere he may be found.

9. **NEEETA SANE, TRUSTEE** for Houston Community College Systems. Service may be affected anywhere she may be found.

10. **CHRISTOPHER OLIVER, TRUSTEE** for Houston Community College Systems. Service may be affected anywhere he may be found.

11. **ZEPH CAPO, TRUSTEE** for Houston Community College Systems. Service may be affected anywhere he may be found.

## II.     Jurisdiction and Venue

12.     Jurisdiction and venue are proper in Harris County, Texas.

## III.     Facts

13.     On or about January 2010, the Houston Community College Systems Board of Trustees adopted its modification of the Board Bylaws. The Board Bylaws codify the rules and regulations in which the College and the Board of Trustees conduct its business. Article ·'G" of the Board By-laws governs the General Board Meeting. Article G(S) provides:

"VOTING: Each Trustee's vote, or failure to vote, shall be recorded by name. Only Trustees present in person may vote. Absent Trustees may listen to the proceedings by electronic media, *but may not vote* on the proceedings. No proxy votes shall be allowed. Other than situations in which a two-thirds vote is required,

2

a majority vote of the total membership of the Board will be required in order for the Board to act."

14.     Based on reasonable belief, Trustee Wilson/Plaintiff asserts that all Houston Community College Trustees received proper training that affirmatively interpreted affirmed Article G(5) to prohibit absentee voting, and that only board members present in person are eligible to vote on any matter before the board/Board.

15.     On or about September 21, 2017, Trustee / Vice Chair Carolyn Evans-Shabazz was not physically present at this Board meeting. Trustee Evan-Shabazz appeared via a video conference and participated in the meeting, including casting her vote on each agenda item. Trustee Wilson objected to her participation/voting on matters before the Board, and asserted that Trustee Evan-Shabazz could not vote on any board agenda item, as it violated the Board's By-laws. Nevertheless, Trustee Evans-Shabazz casted her votes, and such votes were officially recorded tallied along with the votes of the other Trustees.

16.     The act of a Trustee voting, and having the vote counted is an administrative act, and not a discretionary act.

17.     The Defendants refused to take position on the interpretation of its own By-laws. Defendant's conduct ratifying Evans-Shabazz's vote is the selective enforcement, or renders the enforcement of Article G(5) arbitrary and capricious. It is necessary for the Court to interpret Article G(5), as a matter of law so that Trustee David Wilson, and other similarly situated will know (1) if their physical presence is required to participate at each respective Board meeting; (2) whether their vote will be counted; (3) what actions/ notices are necessary for Wilson to provide Houston Community College in advance if he intends to

participate via video conference; and (4) whether Houston Community College Systems is/ or shall be required to accommodate his request for video conference.

18.    Alternatively, if the Court finds that participating by video conference in the Board meetings violates Article G(5) then the Court should declare her vote illegal and void. The Court should order a recount of each agenda item for the Board meeting on September 21, 2017.

### IV.    Causes of Action.

19.    Trustee David Wilson hereby sues Defendants for declaratory judgment and injunctive relief in accordance with the allegations above.

### V.    Damages

20.    Wilson hereby sues for his reasonable and necessary attorney fees.

### Prayer

Plaintiff prays that Defendants be cited to appear and upon a final hearing, and declare the rights and responsibilities of the parties and any other relief, whether general or special, legal or equitable.

The Law Office of Keith A. Gross

By:
Keith A. Gross
State Bar No. 24027357
250 Park Avenue
League City, Texas 77573
Phone: 832-932-5970
Fax: 832-932-5688
attnykgross@aol.com
Attorney for Plaintiff

4

EXHIBIT 2

CAUSE NO. 2017-67357

| | | |
|---|---|---|
| DAVID BUREN WILSON, TRUSTEE, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HOUSTON COMMUNITY COLLEGE | § | |
| SYSTEMS, EVA LOREDO, CHAIR, | § | HARRIS COUNTY,TEXAS |
| CAROLYN EVANS-SHABAZZ, VICE | § | |
| CHAIR, JOHN HANSEN, TRUSTEE | § | |
| ADRIANA TAMEZ, TRUSTEE NEEETA | § | |
| SANE, TRUSTEE | § | |
| CHRISTOPHER OLIVER, TRUSTEE and | § | |
| ZEPI CAP, TRUSTEE[1] | § | 270TH JUDICIAL DISTRICT |
| | § | |
| Defendants. | § | |

## DEFENDANTS' PLEA TO THE JURISDICTION, MOTION TO DISMISS, SPECIAL EXCEPTIONS, AND ORIGINAL ANSWER

Defendants Houston Community College System ("HCC"), Trustees Eva Loredo ("Loredo"), Dr. Carolyn Evans-Shabazz ("Evans-Shavazz"), Dr. John Hansen ("Hansen"), Dr. Adriana Tamez ("Tamez"), Neeta Sane ("Sane"), Christopher Oliver ("Oliver"), and Zeph Capo ("Capo") (all herein referred to as the Defendant, "HCC" or the "College")[2] file this Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer to Plaintiff's Original Petition, and would respectfully show the Court the following:

---

[1] Several of the HCC Trustee's names are misspelled in the Plaintiff's case styling and Original Petition. The College will not change the case styling, but will refer to the College Trustees by their correct names in this Plea.

[2] As noted in the Defendant's Special Exceptions, it is unclear whether the Plaintiff brings claims against the HCC Trustees in their individual capacities. Because the allegations accuse Trustees only of taking legislative actions during a Board meeting, the claims necessarily are against the HCC Trustees in their official capacities. Because a claim against a governmental official in his official capacity is a claim against the entity itself, the Defendant will treat this lawsuit as a lawsuit against the College only and refer to a singular Defendant as Defendant, HCC, or College unless specifically named otherwise. *See Morgan v. City of Alvin*, 175 S.W.3d 408, 414 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("[o]fficial-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.")

# I. STANDARD

1.     A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to the merits of the claim. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A movant may file a plea to the jurisdiction on any ground over which it claims the court has no subject matter jurisdiction. *See City of Austin v. L. S. Ranch, Ltd.*, 970 S.W.2d 750, 752 (Tex. App.—Austin 1998, no pet.); *Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 254 (Tex. App.—San Antonio 1999, pet. denied); *State v. Benavides*, 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied). In determining a jurisdictional question on a challenge to the plaintiff's pleadings, a trial court must, generally, not weigh the merits of the case, but instead consider only the pleadings and evidence pertinent to the jurisdictional question. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 556 (Tex. 2002) (citing *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001) and *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law that is reviewed de novo. *Id.*

2.     Governmental immunity is a jurisdictional issue. *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999); see *Tex. Parks & Wildlife Dep't v. Garrett Place, Inc.*, 972 S.W.2d 140, 143 (Tex. App.—Dallas 1998, no pet.). If a governmental entity is entitled to governmental immunity, the trial court should grant the entity's plea to the jurisdiction. *Jones,* 8 S.W.3d at 638. The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject matter jurisdiction and must show that immunity has been waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Tex. Parks & Wildlife Dep't*, 972 S.W.2d at 140,

142-143. Courts should be particularly concerned with jurisdictional challenges asserted by governmental entities, because the high cost of defending lawsuits is ultimately borne out by the public. *See L.S. Ranch, Ltd.*, 970 S.W.2d at 753.

3.  Texas Rule of Civil Procedure Rule 91a allows a party to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* The purpose of Rule 91a is to allow the Court to quickly dispose of a baseless cause of action as a matter of law without considering any evidence. *See* 2013 Cmt. to TEX. R. CIV. P. 91a. Rule 91a's factual-plausibility standard is akin to a legal-sufficiency review. *See In re Heaven Sent Floor Care*, 2016 WL 7230387, at *2 (Tex. App.—Dallas Dec. 14, 2016, no. pet.). Dismissal is appropriate under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Jones v. Shipley*, 2016 WL 7164051, at *1 (Tex. App.—Houston [1st Dist.] Dec. 8, 2016, no. pet.) (citing to *In re Heaven Sent Floor Care*, 2016 WL 7230387; TEX. R. CIV. P. 91a). "Whether the dismissal standard is satisfied depends 'solely on the pleading of the cause of action.'" *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016). The pleadings are to be both construed liberally in favor of the non-movant and accepted as true, in order for a court to determine whether a cause of action has a basis in law. *Id.* (Higley, J. dissenting) (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Rule 91a has been likened to either a plea to the jurisdiction, *see City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016), or a federal motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *See, e.g. Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 186 (Tex.

App.—Houston [14th Dist.] 2015, pet. denied); *see also GoDaddy.com LLC v. Toups*, 429

S.W.3d 752, 754 (Tex. App.—Beaumont 2014).

## II.   ARUGMENT AND AUTHORITIES IN SUPPORT OF GRANTING PLEA TO THE JURISDICTION, MOTION TO DISMISS, AND SPECIAL EXCEPTIONS

### A.   Governmental Immunity

4.     A public junior college/community college is an agency of the State, and in

exercising governmental functions, the community college is immune from suit and liability

unless the legislature expressly waives sovereign immunity. Houston Community College is a

public community college. *See generally* TEX. EDUC. CODE § 130.182 (defining the Houston

Community College System service area) and § 130.084 (defining authority of HCC board of

trustees); *see also* TEX. CIV. PRAC. & REM. CODE § 101.001(3)(A)-(B) (defining "governmental

unit" to include any junior college district as a political subdivision of the state). With respect to

public community colleges and public school districts, Texas law provides for absolute immunity

from tort liability except those claims involving the negligent operation of a motor vehicle. *See*

TEX. CIV. PRAC. & REM. CODE § 101.051; *Wood v. Coastal Bend Coll.*, 2010 WL 2136621 (Tex.

App.–Corpus Christi 2010, no pet.) (dismissing claim based on allegedly illegal tuition

practices); *Looper v. Houston Community Coll.*, 2007 WL 4200642 at 5 (Tex. App. – Houston

[14th Dist.] 2007, pet. den.); *Freeman v. Del Mar College*, 716 S.W.2d 729 (Tex. App. – Corpus

Christi 1986, no writ).

5.     The Plaintiff's Original Petition brings a Uniform Declaratory Judgment Act

("UDJA") claim against the College regarding an alleged failure to enforce the HCC Board's by-

laws when Trustee Evan-Shabazz attended the meeting via videoconference and participated in

voting in the same. *See* Pl. Orig. Pet at 15-16. The Plaintiff seeks this Court's interpretation of

the College's by-laws as it relates to videoconferencing.

6.     The Defendant retains governmental immunity to the Plaintiff's claims because case law is clear that HCC's immunity is not waived under the Declaratory Judgment Act for conduct alleged by the Plaintiff. *See, e.g., State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 360 (Tex. App. – Austin, 2009) ("[f]or this reason, the UDJA cannot be used as a vehicle to obtain declarations having the effect of establishing a right to relief against the State for which sovereign immunity has not been waived.").

7.     The Texas Supreme Court identifies two distinct types of UDJA actions against the local government for which immunity is waived. First, suits brought against government officials who act without legal or statutory authority in order to compel the officers to act within their official capacity. *City of San Antonio v. Reed S. Lehman Grain, Ltd.*, 2007 WL 752197 (Tex. 2007). Second, suits brought against governmental officials to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities—this second type is not at issue in this case. *Id.*

8.     The Texas Supreme Court has held that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money." *City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009). "However, '[t]o fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, **but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act** . . . [the Court] held that 'as a technical matter, the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit" on such claims. *Id.* at 372–73. This rule 'derives from the premise that the 'acts of officials which

are not lawfully authorized are not acts of the State." *Texas Department of Insurance v. Reconveyance Services, Inc.*, 306 S.W.3d 256 (Tex.2010) (per curiam) (emphasis added).

9. The Plaintiff's complaint does not focus on the constitutionality or statutory authority of the use of videoconferencing in the Texas Open Meetings Act in Texas Government Code Section 551.127, but instead the Plaintiff complains about the College's exercise of that statute conflicting with the College's own internal by-laws related to that matter. His claims can be considered allegations of a lack of legal authority or failure to perform a ministerial act only if failure to follow an internal Board regulation qualifies as such. For the following reasons, videoconference participation is legally authorized and does not involve a ministerial act. While these reasons support governmental immunity, they also provide an independent basis to establish the lack of a viable claim.

**B.    Legislative Immunity**

10. Should the Plaintiff claim Trustees acted in their individual capacities, a necessity to establish ultra vires actions, the Trustees retain legislative immunity. *See, e.g. Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) ("This Court has recognized that individuals acting in a legislative capacity are immune from liability for those actions"); *see also Brown v. Lubbock Cnty. Comm'r Court*, 185 S.W.3d 499, 505 (Tex. App.—Amarillo 2005, no pet.) (holding that the members of the commissioners court had legislative immunity for their performance of legislative functions). The Plaintiff alleges nothing beyond Trustees participating in a Board meeting by discussing and taking action by vote of the Board.

**C.    Community College Bylaws Cannot Limit Statutory Authority**

11. The College does not have the legislative authority to contravene state legislation. As a creation of the legislature, a public community college is controlled by statute. *See Tex. Atty. Gen. Op. DM-20*, 1991 WL 527433 (finding the Texas Higher Education Coordinating

Board did not have authority to establish educational requirements for community college trustees because the qualifications for trustees to seek and hold office are set by statute, and setting additional requirements would be tantamount to adding to the statute).

12.     Texas Government Code Section 551.127 allows for the use of videoconferencing equipment so that a trustee may participate in their duties and rights, including participation in voting. The language of the statute gives members of a governing body the discretion to participate by videoconference under the proper conditions. The language does not grant a government entity the power to decide whether videoconference participation should occur. "A member or employee of a governmental body may participate remotely in a meeting of the governmental body by means of a videoconference call ..." Tex. Gov't Code, § 551.127 (a-1). Because the College cannot restrict that which is conferred by statute, the College's bylaw provision to the contrary cannot be given effect.   In an analogous situation involving Open Meetings Act violations, an appellate court overturned the lower court's portion of an injunction prohibiting school trustees from the use of telephone conferences to discuss public business. *Hitt v. Mabry*, 687 S.W.2d 791, 796 (Tex. App. – San Antonio, 1985).  Its rationale was that "[a] decree of injunction must not be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights." *Id.*

### D.     Plaintiff Waived Complaint by Failing to Exhaust Appeal

13.     "Texas courts generally do require a party to exhaust its administrative remedies before seeking judicial review of the decision of a governmental entity." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467–68 (5th Cir. 2004), *citing Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477, 484–85 (Tex.2002); *Tex. Educ. Agency v. Cypress–Fairbanks I.S.D.*, 830 S.W.2d 88, 89–90 & n. 1 (Tex.1992); *Tex. State Bd. of Exam'rs in Optometry v. Carp*, 162 Tex. 1, 343 S.W.2d 242, 246–47 (1961);

*Firefighters' & Police Officers' Civil Serv. Comm'n v. Herrera*, 981 S.W.2d 728, 732 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Caspary v. Corpus Christi Downtown Mgmt. Dist.*, 942 S.W.2d 223, 226 (Tex. App.—Corpus Christi 1997, writ denied); *Bandera Downs, Inc. v. Alvarez*, 824 S.W.2d 319, 321 (Tex. App.—San Antonio 1992, no writ); *see also Glasscock Underground Water Conservation Dist. v. Pruit*, 915 S.W.2d 577, 580 (Tex. App.—El Paso 1996, no writ) ("In most instances, a party must exhaust available administrative remedies before resorting to the courts." (citing Webb County Appraisal Dist. v. New Laredo Hotel, Inc., 792 S.W.2d 952, 954 (Tex.1990)).

14.     The Fifth Circuit in *Eby* addressed a question of first impression in Texas, where exhaustion requirements were not statutory but found only in the local entity's own regulations. The court concluded, applying an *Erie* analysis, that the Texas Supreme Court, if faced with this situation, would hold that the plaintiff must first exhaust the administrative remedies provided in DART's regulations before pursuing a breach-of-contract action in a court of law.

15.     Robert's Rules of Order governs Board meeting conduct. *See* Ex A at 2 (Board by-law Article G(8) stating "Roberts Rules of Order (most current edition) shall constitute the rules of procedure applicable to all meetings of the Board, when not in conflict with any provision of these bylaws."); *see also* Ex B at 7 (Board policy BD(LOCAL) stating: "[t]he Board shall observe the parliamentary procedures as found in *Robert's Rules of Order, Newly Revised*, except as otherwise provided in Board procedural rules or by law").[3] If Plaintiff objected to Trustee conduct, he was required to raise a question of privilege or a point of order.

---

[3] Exhibits A and B come from the Defendant's policies, which are available on its governmental website at http://www.hccs.edu/about-hcc/policies/ and http://www.hccs.edu/about-hcc/board-of-trustees/board-information/board-bylaws/.

16.     A question of privilege is a *"device that permits a request or main motion relating to the rights and privileges of the assembly or any of its members* to be brought up for possible immediate consideration because of its urgency, while business is pending and the request or motion would otherwise be out of order." *See Robert's Rules of Order Newly Revised*, 10th ed. (2011) at Section 19, pp. 216-217. To raise a question of privilege, a member should say: "I rise to a question of privilege affecting [or 'relating to'] the assembly (or 'to a question of the privileges of the assembly"). *Id.* at p. 221.

17.     A point of order is used when "a member thinks that the rules of the assembly are being violated . . . thereby calling upon the chair for a ruling and an enforcement of the regular rules." *Id.* at Ch. VIII, Section 23, p. 240. A point of order has strict timeliness requirements that require it to be raised at the time the breach occurs. *Id.* at p. 243. To raise a point of order, a member "rises and, without waiting for recognition, immediately addresses the chair as follows: MEMBER A: I rise to a point of order. [Or, 'Point of Order!']." *Id.* at pp. 244-245. Anyone who is speaking takes his seat and the chair asks the member to state his point of order, to which the member then says "MEMBER A: I make the point of order that . . ." *Id.* at p. 245.

18.     Furthermore, a member must appeal an adverse ruling on the above two parliamentary motions at the time, or the member cannot later complain of the same. *Robert's Rules* is clear that "[m]embers have no right to criticize a ruling of the chair unless they appeal from his decision." *Id.* at Ch. VIII, Section 24, p. 247. In order to appeal, a member of the body makes—or "takes"—the appeal and it must be seconded by another member. *Id.* The question is then taken from the Chair and vested in the body as a whole to decide on. *Id.*

19.     The Plaintiff failed to raise one of the above required parliamentary motions by a question of privilege or a point of order and failed to appeal any adverse ruling on the same. *See*

Ex C (verification of Trustee Eva Loredo that she has presided over each meeting of the Board in September and October of 2017 where a trustee participated via video conference and confirming that Trustee Wilson did not raise a point of order in accordance with Robert's Rules regarding any interpretation of Board meeting requirements and did not seek an appeal of an adverse ruling or failure to rule). By failing to raise the motion through *Robert's Rules of Order, Newly Revised*, the Plaintiff failed to meet the conditions precedent to complaining of the actions of the College or Board. Even if the Plaintiff had raised a motion, by failing to appeal a ruling on the same, the Plaintiff has foreclosed his right to contest the ruling at a later date.

20.     Accordingly, this Court should grant the plea to the jurisdiction regarding the Plaintiffs declaratory judgment action on the basis of governmental and legislative immunity. Alternatively, the Court should grant the plea on the basis there is no justiciable issue because a rule of the Board cannot limit what is authorized by statute and because Plaintiff failed to exhaust his administrative remedies.

### III.     <u>MOTION TO DISMISS</u>

21.     Under Texas Rule of Civil Procedure 91a, Defendant moves dismissal of each cause of action asserted by Plaintiff on the grounds that each has no basis in law or fact for all the reasons asserted in Section II, *supra*.

### IV.     <u>SPECIAL EXCEPTIONS</u>

22.     The Texas Rules of Civil Procedure require the Plaintiff to provide "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a). When a pleading is defective, the Texas Rules provide for special exceptions to call notice to the insufficient or defective pleading. *See* TEX. R. CIV. P. 91. The Defendant specially

excepts to the Plaintiff's Original Petition because it is deficient, for the reasons stated in the foregoing paragraphs, in the following respects:

    a.  in paragraphs 2, 4-11 in that it has not alleged whether the suit is brought against the trustees in their official or individual capacities;

    b.  in paragraphs 17-19 it has not alleged a unique basis for a declaratory judgment action so as to waive the Defendant's governmental immunity; and

    c.  in paragraph 20 in that it has not alleged how it can recover attorney's fees if it prevails when such recover is barred by governmental immunity. The College retains immunity to attorney's fees unless such fees are recoverable under an independent statute which creates a substantive right to attorney's fees. *See Cty. of Galveston v. Triple B Servs., LLP*, 498 S.W.3d 176, 189–90 (Tex. App. – Houston [1st Dist.], 2016), rev. denied (2017).

## V.   GENERAL DENIAL

23.    Defendant asserts a general denial under Texas Rule of Civil Procedure 92. It denies each and every, all and singular, the material allegations made by the Plaintiff and requests strict proof of such allegation as is required by Texas law.

## VI.   DEFENSES

24.    In asserting the following defenses, HCC does not admit that the burden of proving the allegations or denials contained in the defenses is upon HCC, but, to the contrary, asserts that the burden of proving the facts relevant to many of the defenses and the burden of proving the inverse of the allegations contained in many of the defenses is upon the Plaintiff. Moreover, in asserting any defense, HCC does not admit any liability, but to the contrary,

specifically denies any and all allegations of liability in the Plaintiff's lawsuit. Without admitting liability as to any of the Plaintiff's causes of action, HCC asserts the following defenses:

    a. Plaintiff has failed to state claims upon which relief can be granted, and more specifically, has failed to state a claim within the Court's jurisdiction.

    b. Plaintiff's declaratory judgment act claim is barred by governmental immunity.

    c. Plaintiff's suit and/or claims are precluded by sovereign, governmental, and/or legislative immunity.

    d. The Plaintiff seeks damages that are not recoverable.

    e. The Plaintiff's claims are barred, in whole or in part, because HCC's actions, including the actions of its body corporate, related to the Plaintiff's claims were at all times in compliance and comportment all applicable laws, and were taken in good faith and for lawful, legitimate, and nondiscriminatory reasons.

    f. Plaintiff intentionally engaged in conduct that is inconsistent with claiming a known right.

    g. Plaintiff has failed to perform all conditions precedent to filing suit.

    h. The Plaintiff's claims are barred, in whole or in part, to the extent the Plaintiff has failed to exhaust the administrative prerequisites for filing suit.

    i. Defendant HCC reserves the right to assert additional defenses or affirmative defenses as they become apparent through discovery.

## VII.   HCC's REQUEST FOR COSTS AND ATTORNEY'S FEES

25.     Section 11.161 of the Texas Education Code allows independent school districts to recover reasonable attorneys' fees and costs if "(1) the court finds that the suit is frivolous, unreasonable, and without foundation; and (2) the suit is dismissed or judgment is for the

defendant." TEX. EDUC. CODE § 11.161. Section 11.161 is applicable to the Defendant, a community college, under Section 130.084 of the Texas Education Code.[4] A "frivolous" suit is generally understood to mean one that does not have a reasonable basis in law or fact. *See Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1991) (per curiam); *Thielemann v. Blinn Bd. of Trustees*, 01-14-00595-CV, 2015 WL 1247018, at *2 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, no pet.). Here, the above authority and arguments in this Plea establish that a public community college retains governmental immunity, and the Plaintiff has not properly pled a waiver of that immunity. Moreover, the Plaintiff failed to avail himself of the proper channels, as a trustee, to raise his complaints. Because Plaintiff has not met his burden, his suit is frivolous, and Defendant hereby asserts a request for costs and attorney's fees under Section 11.161 of the Texas Education Code.

## VIII.   HCC's REQUEST FOR DISCLOSURE

26.    Under authority of Texas Rule of Civil Procedure 194, HCC requests that the Plaintiff disclose, within 30 days of service of this request, the information and/or material requested in Texas Rule of Civil Procedure 194.2(a)-(l).

## IX.   PRAYER

27.    For the foregoing reasons, Defendant HCC asks the Court to grant its Plea to the Jurisdiction and/or Motion to Dismiss regarding Plaintiff's claims, alternatively grant its special exceptions by requiring Plaintiff to replead to allege facts supporting waiver of immunity, deny

---

[4] Section 130.084 of the Texas Education Code provides that the management and control of a junior college are governed by the general law governing the management and control of an independent school district.

Plaintiff all relief requested, award the District its reasonable attorney's fees and costs, and award the District all other relief to which it is entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: _____

Arturo G. Michel
State Bar No. 14009440
amichel@thompsonhorton.com

Benjamin P. Wells
State Bar No. 24093341
bwells@thompsonhorton.com

Phoenix Tower
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6766
Facsimile: (713) 583-9397

**ATTORNEYS FOR HOUSTON COMMUNITY COLLEGE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been forwarded on this 17th day of November, 2017 to counsel of record for the Plaintiff by electronic service and/or certified mail as follows:

Mr. Keith A. Gross
The Law Office-of Keith A. Gross
250 Park Avenue
League City, TX 77573

/s/ Ben Wells
_____
Benjamin P. Wells

931470_2

# Exhibit A



**HOUSTON COMMUNITY COLLEGE**

# Board of Trustees
# Bylaws

## Adopted
## January 1, 2010

(Amended June 29, 2010)

(Amended September 23, 2010)

(Amended December 2, 2010)

(Amended November 17, 2011)

(Amended December 15, 2011)

(Amended June 21, 2012)

(Amended June 24, 2014)

(Amended November 18, 2014)

(Amended April 16, 2015)

(Amended April 21, 2016)

(Amended October 20, 2016)

(Amended June 15, 2017)

# BYLAWS OF THE
# BOARD OF TRUSTEES OF THE
# HOUSTON COMMUNITY COLLEGE

**Adopted January 1, 2010**

**Amended June 29, 2010**

**Amended September 23, 2010**

**Amended December 2, 2010**

**Amended November 17, 2011**

**Amended December 15, 2011**

**Amended June 21, 2012**

**Amended June 24, 2014**

**Amended November 18, 2014**

**Amended February 27, 2015**

**Amended April 16, 2015**

**Amended January 21, 2016**

**Amended February 25, 2016**

**Amended April 21, 2016**

**Amended June 16, 2016**

**Amended October 20, 2016**

**Amended June 15, 2017**

# Table of Contents

Preface

Mission

ARTICLE A:  ETHICS
| | | |
|---|---|---|
| Sec. 1. | **Purpose** | |
| Sec. 2. | **Distribution Policy** | |
| Sec. 3. | **Applicability** | |
| Sec. 4. | **Code of Conduct** *(Amended December 2, 2010; November 17, 2011)* | |
| Sec. 5. | **Prohibited Communications/Political Contributions** *(Amended September 23, 2010, November 17, 2011, December 15, 2011, June 21, 2012)* | |
| Sec. 6. | **Limits on Repayment of Personal Loans** *(June 21, 2012)* | |
| Sec. 7. | **Prohibited Benefits** *(Amended September 23, 2010)* | |
| Sec. 8. | **Political Activities** | |
| Sec. 9. | **Campaign Finance Reports** *(Amended January 21, 2016)* | |
| Sec. 10. | **Misuse of Official Information** | |
| Sec. 11. | **Mechanisms for Enforcement** *(Amended November 17, 2011; November 18, 2014; January 21, 2016)* | |

ARTICLE B:  POWERS OF THE BOARD
| | |
|---|---|
| Sec. 1. | **Authority** |
| Sec. 2. | **Delegation of Authority in Emergency** |
| Sec. 3. | **Policy Direction** |
| Sec. 4. | **Board Leadership** |

ARTICLE C:  ELECTIONS

ARTICLE D:  OFFICERS OF THE BOARD
| | |
|---|---|
| Sec. 1. | **Election** |
| Sec. 2. | **Chair** |
| Sec. 3. | **Vice Chair** |
| Sec. 4. | **Secretary** |

## ARTICLE E:  PERSONNEL APPOINTED BY AND REPORTING DIRECTLY TO THE BOARD

**Sec. 1.**  **Appointments**

**Sec. 2.**  **Chancellor** *(Amended January 21, 2016)*

**Sec. 3.**  **External Auditor and Internal Auditor** *(Amended April 16, 2015, February 25, 2016)*

**Sec. 4.**  **Board Counsel and General Counsel** *(Amended February 27, 2014, February 25, 2016, June 16, 2016)*

**Sec. 5.**  **Financial Advisor** *(Amended February 25, 2016, June 15, 2017)*

## ARTICLE F:  COMMITTEES

**Sec. 1.**  **General**

**Sec. 2.**  **Appointed Committees**

**Sec. 3.**  **Committee of the Whole Meetings** *(Amended June 24, 2014)*

**Sec. 4.**  **Standing Committees** *(Amended June 29, 2010, April 21, 2016)*

**Sec. 5.**  **Special/Ad Hoc Committees**

**Sec. 6.**  **Appointments to Outside Entities**

**Sec. 7.**  **Community Advisory Committees**

## ARTICLE G:  GENERAL BOARD MEETINGS

**Sec. 1.**  **Open Meetings**

**Sec. 2.**  **Definitions**

**Sec. 3.**  **Time and Location** *(Amended December 2, 2010)*

**Sec. 4.**  **Notice**

**Sec. 5.**  **Voting** *(Amended April 16, 2015)*

**Sec. 6.**  **Order of Business**

**Sec. 7.**  **Agenda** *(Added April 16, 2015, June 15, 2017)*

**Sec. 8.**  **Rules of Order**

**Sec. 9.**  **Minutes and Recordings**

**Sec. 10.**  **Special Meetings**

**Sec. 11.**  **Closed Meetings/Executive Session**

**Sec. 12.**  **Prohibitions**

Sec. 13.   **Citizen Participation**

Sec. 14.   **Disruption**

Sec. 15.   **Social Functions and Related Events**


# ARTICLE H:  BOARD OPERATIONS

Sec. 1.   **Evaluation**

Sec. 2.   **Efficiency**

Sec. 3.   **Expenditures** *(Amended September 23, 2010; Amended December 13, 2012)*

**Board Account for Community Affairs Request Form**

Sec. 4.   **Public Statements and the Media** *(Amended January 21, 2016)*

Sec. 5.   **Training** *(Amended September 23, 2010; Amended November 17, 2011; January 21, 2016)*

Sec. 6.   **Self-Assessment of the Board**

Sec. 7.   **Requests for Information** *(Amended October 20, 2016)*

Sec. 8.   **Requests for Documents** *(Amended January 21, 2016)*

Sec. 9.   **Requests for Legal Advice** *(Amended January 21, 2016)*

Sec. 10.   **Board Member Complaints** *(Amended January 21, 2016)*


# EXHIBITS

Exhibit A.   **Houston Community College Board of Trustees and Senior Staff Conflict of Interest Certification**

Exhibit B.   **Code of Ethics Complaint Form**

Exhibit C.   **HCC Trustee Board Account for Community Affairs Request**

Exhibit D.   **Request to Access Official College Records**

Exhibit E.   **Board member Complaint Form**

# Article G:  General Board Meetings

Responsible Board Committee:    Board Governance

Responsible Department/Group:  Board of Trustees

---

**1.    OPEN MEETINGS.**  The Board shall hold regular meetings for purposes of handling College business. All meetings shall be held in compliance with the Texas Open Meetings Act.  Citizens are welcome to attend meetings of the Board.  Trustees shall adhere to the Board Code of Conduct and promote Board Leadership at all times.

**2.    DEFINITIONS.**

**A "meeting" occurs when:**

> a.    A quorum of members of the Board deliberate with each other or with any other person; and

> b.    Such quorum discusses, considers, or takes formal action on public business or public policy that the Board supervises or controls.

"Deliberation" means an exchange, verbal, electronic or otherwise, between a quorum of Board members (or between them and any other person) concerning any issue within the jurisdiction of the Board or any public business.

No deliberation that affects public business is allowed to take place in any setting other than a duly posted meeting of a quorum of Board members.

**3.    TIME AND LOCATION.**  Unless otherwise provided, the regular meeting of the Board shall be held on the third Thursday of each month at the HCC Building, 3100 Main Street. Such meetings may be recessed from day to day until the completion of business. The time for special and emergency meetings of the Board shall be as stipulated in the notice for the meeting.

**4.    NOTICE.**    Written notice of all meetings shall be posted at the central administration building and the  website by the Board Services Office.  Furthermore, notice shall be furnished for posting to the Harris County Clerk, the Fort Bend County Clerk, and upon request, to the media. Notice of all meetings shall provide for the possibility of a closed or executive session during an open meeting, as provided by law.

**5.    VOTING.**  Each Trustee's vote, or failure to vote, shall be recorded by name. Only Trustees present in person may vote. Absent Trustees may listen to the proceedings by electronic media, but may not vote on the proceedings. No proxy votes shall be allowed.  Other than situations in which a two-thirds vote is required, a majority vote of the total membership of the Board will be required in order for the Board to act.

6.    **ORDER OF BUSINESS**. The Board Chair and the Chancellor shall decide the order of business for meetings. (See HCC POLICY MANUAL)

7.    **AGENDA**. At the direction of the Board chair, the Chancellor shall prepare and present an agenda at least 7 calendar days prior to the regular Board meeting, having followed the agenda preparation process established by the Board. An item shall be added to the agenda by the written request of three (3) Trustees submitted to the Chancellor or Board Chair at least seven (7) days prior to the meeting.

Either the Board Chair or the Chancellor, at his or her discretion, may pull any item noticed for discussion and/or action from the agenda without further action by the Board unless that item has been added by the written request of three (3) Trustees, in accordance with the procedures outlined above.

Copies of the electronic agenda and related materials shall be delivered to Board members by Board Services. Paper copies of the agenda and related materials shall be delivered to Board members upon a written request submitted to Board Services.

8.    **RULES OF ORDER**. Robert's Rules of Order (most current edition) shall constitute the rules of procedure applicable to all meetings of the Board, when not in conflict with any provisions of law or these bylaws. The Board may suspend the rules, as needed, by a two-thirds vote of the composition of the full Board.

9.    **MINUTES AND RECORDINGS**. The Board shall prepare and keep minutes and/or make a tape recording of each open meeting. The minutes and tapes are public records and shall be available for public inspection and copying upon request to the Board office. Any person in attendance can make an audio or video recording of any or all of an open meeting, subject to reasonable rules adopted by the Board to maintain order.

10.   **SPECIAL MEETINGS**. Special meetings of the Board may be called by either the Chair at his/her own discretion, or by the independent requests of three (3) Trustees who must call for the meeting in writing, specifying the date, time, place, and purpose of the meeting. Special meetings must be duly posted.

11.   **CLOSED MEETINGS/EXECUTIVE SESSION**. Trustees, employees and agents of the College shall not divulge to any person the substance of matters discussed at any closed meeting, except as otherwise required or allowed by law. Closed meetings shall be held as allowed by law to have discussions and deliberations of College matters that cannot be made public. A further objective would be to protect the attorney-client privilege recognized by law.

12.   **PROHIBITIONS**. No Board member shall knowingly call or aid in calling or organizing a closed meeting that is not permitted under the Open Meetings Act. No Board member shall knowingly close or aid in closing a regular meeting to the public (except as permitted under the Open Meetings Act). No Board member shall participate in a closed meeting that is not permitted under the Open Meetings Act.

**13. CITIZEN PARTICIPATION.** The Board shall provide opportunities at its meetings for citizens to address the Board, but shall impose reasonable restraints on the number, length, and frequency of presentations, so long as it does not unfairly discriminate among views seeking expression.

**14. DISRUPTION.** It is a criminal offense for a person, with intent to prevent or disrupt a lawful meeting, to substantially obstruct or interfere with the meeting by physical action or verbal utterance. The Board may immediately remove from the meeting any person causing a substantial disruption.

**15. SOCIAL FUNCTIONS AND RELATED EVENTS.** The Board may congregate for social functions, such as meals or festivities, but shall refrain from discussing issues under consideration by the Board for a Board vote. Trustees may gather in a quorum at a social function unrelated to the public business of the College, or at a regional, state or national convention or workshop, if formal action is not taken. Such gatherings are not "meetings" under the law and no public notice is required to attend such gatherings. (Tex. Govt. Code 551.001)

Exhibit B

| | |
|---|---|
| **MEETING PLACE AND TIME** | The notice for a Board meeting shall reflect the date, time, and location of the meeting. |
| **REGULAR MEETINGS** | Regular meetings of the Board shall typically be held on the third Thursday of each month at the HCC Building, 3100 Main Street. Such meetings may be recessed from day to day until the completion of business. When determined necessary and for the convenience of Board members, the Board Chair may change the date, time, or location of a regular meeting with proper notice. [See Board Bylaws, Article G, Section 3] |
| **SPECIAL OR EMERGENCY MEETINGS** | The Board Chair shall call a special meeting at the Board Chair's discretion, or by the independent requests of three (3) members of the Board who must call for the meeting in writing, specifying the date, time, place, and purpose of the meeting. Special meetings must be duly posted. [See Board Bylaws, Article G, Section 10] |
| | The Board Chair shall call an emergency meeting when it is determined by the Board Chair, or by the independent requests of three (3) members of the Board that an emergency or urgent public necessity, as defined by law, warrants the meeting. Emergency meetings must be duly posted. |
| **AGENDA PREPARATION** | At the direction of the Board Chair, the Chancellor shall prepare and present an agenda at least seven (7) calendar days prior to the regular Board meeting, having followed the agenda preparation process established by the Board. [See Board Bylaws, Article G, Section 7] |
| **SUBMISSION OF TOPICS** | An item shall be added to the agenda by the written request of three (3) Board members submitted to the Chancellor or Board Chair at least seven (7) days prior to the meeting. |
| | Either the Board Chair or the Chancellor, at his or her discretion, may pull any item noticed for discussion and/or action from the agenda without further action by the Board unless that item has been added by the written request of three (3) Board members, in accordance with the procedures outlined above.[See Board Bylaws, Article G, Section 7] |
| **CONSENT AGENDA** | When the agenda is prepared, the Board Chair shall determine items, if any, that qualify to be placed on the consent agenda. A consent agenda shall include items of a routine and/or recurring nature, as well as committee recommendations, grouped together under one action item. |
| | For each item listed as part of a consent agenda, the Board shall be furnished with background material. All such items shall be act- |

ed upon by one vote without separate discussion, unless a Board member requests that an item be withdrawn for individual consideration. The remaining items shall be adopted under a single motion and vote.

**NOTICE TO MEMBERS**  Members of the Board shall be given notice of regular and special meetings at least 72 hours prior to the scheduled time of the meeting and at least two hours prior to the time of an emergency meeting.

**CLOSED MEETING**  Notice of all meetings shall provide for the possibility of a closed meeting during an open meeting, as provided by law. The Board may conduct a closed meeting when the agenda subject is one that may properly be discussed in closed meeting.

Trustees, employees, and agents of the College District shall not divulge to any person the substance of matters discussed at any closed meeting, except as otherwise required or allowed by law. Closed meetings shall be held as allowed by law to have discussions and deliberations of College matters that cannot be made public. A further objective would be to protect the attorney-client privilege recognized by law.

[See BDA and Board Bylaws, Article G, Section 11]

**ORDER OF BUSINESS**  The Chancellor and the Board Chair shall decide the order of business for meetings.

**RULES OF ORDER**  The Board shall observe the parliamentary procedures as found in *Robert's Rules of Order, Newly Revised*, except as otherwise provided in Board procedural rules or by law. Procedural rules may be suspended at any Board meeting by a two-thirds vote of the entire membership of the Board.

**VOTING**  Voting shall be by voice vote or show of hands, as directed by the Board Chair. Each member's vote, or failure to vote, shall be recorded by name. Only members present in person may vote. Absent members may listen to the proceedings by electronic media, but may not vote on the proceedings. No proxy votes shall be allowed. Other than situations in which a two-thirds vote is required, a majority vote of the total membership of the Board will be required in order for the Board to act. [See Board Bylaws, Article G, Section 5]

**MINUTES**  The Board shall prepare and keep minutes and/or make a tape recording of each open meeting. The minutes and tapes are public records and shall be available for public inspection and copying upon request to Board Services. Any person in attendance can make an audio or video recording of any or all of an open meeting, subject to reasonable rules adopted by the Board to maintain order. [See Board Bylaws, Article G, Section 9]

| | |
|---|---|
| DISCUSSIONS AND LIMITATION | Discussions shall be addressed to the Board Chair and then the entire membership.  Discussion shall be directed solely to the business currently under deliberation, and the Board Chair shall halt discussion that does not apply to the business before the Board. |

The Board Chair shall also halt discussion if the Board has agreed to a time limitation for discussion of an item, and that time limit has expired.  Aside from these limitations, the Board Chair shall not interfere with debate so long as members wish to address themselves to an item under consideration.

# Exhibit C

STATE OF TEXAS          §
                       §
COUNTY OF HARRIS        §

## **DECLARATION OF FACTS**

My name is Eva Loredo, I am over 18 years of age, and my address is Houston Community
College, care of Board Services, 3100 Main St., Houston, TX. 77002. I am the Chair of the
Board of Trustees ("Board") of the Houston Community College System ("College") and have
held that position throughout the 2017 calendar year. I presided over each meeting of the Board
in September and October of 2017 where a trustee participated in a meeting by videoconference.
I declare under penalty of perjury that the facts in paragraph 19 of the foregoing pleading are true
and correct.

Executed in Harris County, State of Texas, on the 17th day of November, 2017.

_Eva Loredo_

Eva Loredo

Declarant

EXHIBIT 3

CAUSE NO. 2017-67357

| | | |
|---|---|---|
| DAVID BUREN WILSON, TRUSTEE, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HOUSTON COMMUNITY COLLEGE | § | |
| SYSTEMS, EVA LOREDO, CHAIR, | § | HARRIS COUNTY,TEXAS |
| CAROLYN EVANS-SHABAZZ, VICE | § | |
| CHAIR, JOHN HANSEN, TRUSTEE | § | |
| ADRIANA TAMEZ, ROBERT GLASER, | § | |
| TRUSTEE NEEETA SANE, TRUSTEE | § | |
| CHRISTOPHER OLIVER, TRUSTEE and | § | |
| ZEPH CAPO, TRUSTEE[1] | § | |
| | § | 270TH JUDICIAL DISTRICT |
| Defendants. | § | |

## DEFENDANTS' FIRST AMENDED PLEA TO THE JURISDICTION, MOTION TO DISMISS, SPECIAL EXCEPTIONS, AND ORIGINAL ANSWER

Defendants Houston Community College System ("HCC"), Trustees Eva Loredo ("Loredo"), Dr. Carolyn Evans-Shabazz ("Evans-Shavazz"), Dr. John Hansen ("Hansen"), Dr. Adriana Tamez ("Tamez"), Robert Glaser ("Glaser"), Neeta Sane ("Sane"), Christopher Oliver ("Oliver"), and Zeph Capo ("Capo") (all herein referred to as the Defendant, "HCC" or the "College")[2] file this First Amended Plea to the Jurisdiction, Motion to Dismiss, Special

---

[1] Trustee Sane's first name is misspelled in the Plaintiff's filing. It is incorrectly listed as "Neeeta" rather than "Neeta". The College will not change the case styling, but will refer to Trustee Neeta Sane by her correct name in this Plea.

[2] As noted in the Defendant's Special Exceptions, Plaintiff does not state that he brings claims against the HCC Trustees in their individual capacities. Because the allegations accuse Trustees only of taking legislative actions during a Board meeting, the claims necessarily are against the HCC Trustees in their official capacities. Because a claim against a governmental official in his official capacity is a claim against the entity itself, the Defendant will treat this lawsuit as a lawsuit against the College only and refer to a singular Defendant as Defendant, HCC, or College unless specifically named otherwise. *See Morgan v. City of Alvin*, 175 S.W.3d 408, 414 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("[o]fficial-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an office is an agent.' As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.")

Exceptions, and Original Answer to Plaintiff's Original Petition, and would respectfully show the Court the following:

## I.   **STANDARD**

1.     A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to the merits of the claim. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A movant may file a plea to the jurisdiction on any ground over which it claims the court has no subject matter jurisdiction. *See City of Austin v. L. S. Ranch, Ltd.*, 970 S.W.2d 750, 752 (Tex. App.—Austin 1998, no pet.); *Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 254 (Tex. App.—San Antonio 1999, pet. denied); *State v. Benavides*, 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied). In determining a jurisdictional question on a challenge to the plaintiff's pleadings, a trial court must, generally, not weigh the merits of the case, but instead consider only the pleadings and evidence pertinent to the jurisdictional question. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 556 (Tex. 2002) (citing *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001) and *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law that is reviewed de novo. *Id.*

2.     Governmental immunity is a jurisdictional issue. *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999); *see Tex. Parks & Wildlife Dep't v. Garrett Place, Inc.*, 972 S.W.2d 140, 143 (Tex. App.—Dallas 1998, no pet.). If a governmental entity is entitled to governmental immunity, the trial court should grant the entity's plea to the jurisdiction. *Jones,* 8 S.W.3d at 638. The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject matter

jurisdiction and must show that immunity has been waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Tex. Parks & Wildlife Dep't*, 972 S.W.2d at 140, 142-143. Courts should be particularly concerned with jurisdictional challenges asserted by governmental entities, because the high cost of defending lawsuits is ultimately borne out by the public. *See L.S. Ranch, Ltd.*, 970 S.W.2d at 753.

3.      Texas Rule of Civil Procedure Rule 91a allows a party to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id*. The purpose of Rule 91a is to allow the Court to quickly dispose of a baseless cause of action as a matter of law without considering any evidence. *See* 2013 Cmt. to TEX. R. CIV. P. 91a. Rule 91a's factual-plausibility standard is akin to a legal-sufficiency review. *See In re Heaven Sent Floor Care*, 2016 WL 7230387, at *2 (Tex. App.—Dallas Dec. 14, 2016, no. pet.). Dismissal is appropriate under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Jones v. Shipley*, 2016 WL 7164051, at *1 (Tex. App.—Houston [1st Dist.] Dec. 8, 2016, no. pet.) (citing to *In re Heaven Sent Floor Care*, 2016 WL 7230387; TEX. R. CIV. P. 91a). "Whether the dismissal standard is satisfied depends 'solely on the pleading of the cause of action.'" *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016). The pleadings are to be both construed liberally in favor of the non-movant and accepted as true, in order for a court to determine whether a cause of action has a basis in law. *Id.* (Higley, J. dissenting) (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Rule 91a has been likened to either a plea to the jurisdiction, *see City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016), or a federal motion to dismiss under

Federal Rules of Civil Procedure Rule 12(b)(6) for failure "to state a claim upon which relief can be granted." *See, e.g. Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 186 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see also GoDaddy.com LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014).

## II.    ARGUMENT AND AUTHORITIES IN SUPPORT OF GRANTING PLEA TO THE JURISDICTION, MOTION TO DISMISS, AND SPECIAL EXCEPTIONS

### A.    Governmental Immunity

4.    A public junior college/community college is an agency of the State, and in exercising governmental functions, the community college is immune from suit and liability unless the legislature expressly waives sovereign immunity. Houston Community College is a public community college. *See generally* TEX. EDUC. CODE § 130.182 (defining the Houston Community College System service area) and § 130.084 (defining authority of HCC board of trustees); *see also* TEX. CIV. PRAC. & REM. CODE § 101.001(3)(A)-(B) (defining "governmental unit" to include any junior college district as a political subdivision of the state). With respect to public community colleges and public school districts, Texas law provides for absolute immunity from tort liability except those claims involving the negligent operation of a motor vehicle. *See* TEX. CIV. PRAC. & REM. CODE § 101.051; *Wood v. Coastal Bend Coll.*, 2010 WL 2136621 (Tex. App.–Corpus Christi 2010, no pet.) (dismissing claim based on allegedly illegal tuition practices); *Looper v. Houston Community Coll.*, 2007 WL 4200642 at 5 (Tex. App. – Houston [14th Dist.] 2007, pet. den.); *Freeman v. Del Mar College*, 716 S.W.2d 729 (Tex. App. – Corpus Christi 1986, no writ).

5.    The Plaintiff's Original Petition brings a Uniform Declaratory Judgment Act ("UDJA") claim against the College regarding an alleged failure to enforce the HCC Board's bylaws when Trustee Evan-Shabazz attended the meeting via videoconference and participated

in voting in the same. *See* Pl. Orig. Pet. at paragraphs 15-16. The Plaintiff seeks this Court's interpretation of the College's bylaws as it relates to videoconferencing.

6.    The Defendant retains governmental immunity to the Plaintiff's claims because case law is clear that HCC's immunity is not waived under the Declaratory Judgment Act for conduct alleged by the Plaintiff. *See, e.g.*, *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 360 (Tex. App.–Austin, 2009) ("[f]or this reason, the UDJA cannot be used as a vehicle to obtain declarations having the effect of establishing a right to relief against the State for which sovereign immunity has not been waived.").

7.    The Texas Supreme Court identifies two distinct types of UDJA actions against a local government for which immunity is waived. First, suits brought against government officials who act without legal or statutory authority in order to compel the officers to act within their official capacity. *City of San Antonio v. Reed S. Lehman Grain, Ltd.*, 2007 WL 752197 (Tex. 2007). Second, suits brought against governmental officials to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities—this second type is not at issue in this case. *Id.*

8.    The Texas Supreme Court has held that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money." *City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009). "However, '[t]o fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, **but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act** . . . [the Court] held that 'as a technical matter, the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit" on

such claims. *Id.* at 372–73. This rule 'derives from the premise that the 'acts of officials which are not lawfully authorized are not acts of the State." *Texas Department of Insurance v. Reconveyance Services, Inc.*, 306 S.W.3d 256 (Tex.2010) (per curiam) (emphasis added).

9.      The Plaintiff's complaint does not focus on the constitutionality or statutory authority of the use of videoconferencing in the Texas Open Meetings Act in Texas Government Code Section 551.127, but instead the Plaintiff complains about the College's exercise of that statute conflicting with the College's own internal bylaws related to that matter. His claims can be considered allegations of a lack of legal authority or failure to perform a ministerial act only if failure to follow an internal Board regulation qualifies as such. For the following reasons, videoconference participation is legally authorized and does not involve a ministerial act.  While these reasons support governmental immunity, they also provide an independent basis to establish the lack of a viable claim.

### B.      Legislative Immunity

10.      Should the Plaintiff claim Trustees acted in their individual capacities, a necessity to establish ultra vires actions, the Trustees retain legislative immunity. *See, e.g. Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) ("This Court has recognized that individuals acting in a legislative capacity are immune from liability for those actions"); *see also Brown v. Lubbock Cnty. Comm'r Court*, 185 S.W.3d 499, 505 (Tex. App.—Amarillo 2005, no pet.) (holding that the members of the commissioners court had legislative immunity for their performance of legislative functions). The Plaintiff alleges nothing beyond Trustees participating in a Board meeting by discussing and taking action by vote of the Board.

### C.      Community College Bylaws Cannot Limit Statutory Authority

11.      The College does not have the legislative authority to contravene state legislation. As a creation of the legislature, a public community college is controlled by statute. *See Tex.*

*Atty. Gen. Op. DM-20*, 1991 WL 527433 (finding the Texas Higher Education Coordinating Board did not have authority to establish educational requirements for community college trustees because the qualifications for trustees to seek and hold office are set by statute, and setting additional requirements would be tantamount to adding to the statute).

12.      Texas Government Code Section 551.127 allows for the use of videoconferencing equipment so that a trustee may participate in his or her duties and rights, including participation in voting. The language of the statute gives members of a governing body the discretion to participate by videoconference under the proper conditions. The language does not grant a government entity the power to decide whether videoconference participation should occur. "A member or employee of a governmental body may participate remotely in a meeting of the governmental body by means of a videoconference call ..." Tex. Gov't Code, § 551.127 (a-1). Because the College cannot restrict that which is conferred by statute, the College's bylaw provision to the contrary cannot be given effect. In an analogous situation involving Open Meetings Act violations, an appellate court overturned the lower court's portion of an injunction prohibiting school trustees from the use of telephone conferences to discuss public business. *Hitt v. Mabry*, 687 S.W.2d 791, 796 (Tex. App. – San Antonio, 1985). Its rationale was that "[a] decree of injunction must not be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights." *Id.*

**D.      Plaintiff Waived Complaint by Failing to Exhaust Appeal**

13.      "Texas courts generally do require a party to exhaust its administrative remedies before seeking judicial review of the decision of a governmental entity." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467–68 (5th Cir. 2004), *citing Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477, 484–85 (Tex.2002); *Tex. Educ. Agency v. Cypress–Fairbanks I.S.D.*, 830 S.W.2d 88, 89–90 & n. 1 (Tex.1992); *Tex.*

*State Bd. of Exam'rs in Optometry v. Carp*, 162 Tex. 1, 343 S.W.2d 242, 246–47 (1961); *Firefighters' & Police Officers' Civil Serv. Comm'n v. Herrera*, 981 S.W.2d 728, 732 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Caspary v. Corpus Christi Downtown Mgmt. Dist.*, 942 S.W.2d 223, 226 (Tex. App.—Corpus Christi 1997, writ denied); *Bandera Downs, Inc. v. Alvarez*, 824 S.W.2d 319, 321 (Tex. App.—San Antonio 1992, no writ); *see also Glasscock Underground Water Conservation Dist. v. Pruit*, 915 S.W.2d 577, 580 (Tex. App.— El Paso 1996, no writ) ("In most instances, a party must exhaust available administrative remedies before resorting to the courts." (citing Webb County Appraisal Dist. v. New Laredo Hotel, Inc., 792 S.W.2d 952, 954 (Tex.1990)).

14.     The Fifth Circuit in *Eby* addressed a question of first impression in Texas, where exhaustion requirements were not statutory but found only in the local entity's own regulations. The court concluded, applying an *Erie* analysis, that the Texas Supreme Court, if faced with this situation, would hold that the plaintiff must first exhaust the administrative remedies provided in DART's regulations before pursuing a breach-of-contract action in a court of law.

15.     Robert's Rules of Order governs Board meeting conduct. *See* Ex A at 2 (Board bylaw Article G(8) stating "Roberts Rules of Order (most current edition) shall constitute the rules of procedure applicable to all meetings of the Board, when not in conflict with any provisions of law or these bylaws."); *see also* Ex B at p. 2 of 3, "Rules of Order" (Board policy BD(LOCAL) stating: "[t]he Board shall observe the parliamentary procedures as found in *Robert's Rules of Order, Newly Revised*, except as otherwise provided in Board procedural rules or by law").[3] If Plaintiff objected to Trustee conduct, he was required to raise a question of privilege or a point of order.

---

[3] Exhibits A and B come from the Defendant's policies, which are available on its governmental website at

16.     A question of privilege is a *"device that permits a request or main motion relating to the rights and privileges of the assembly or any of its members* to be brought up for possible immediate consideration because of its urgency, while business is pending and the request or motion would otherwise be out of order." *See Robert's Rules of Order Newly Revised*, 10th ed. (2000) at Section 19, pp. 216-217. To raise a question of privilege, a member should say: "I rise to a question of privilege affecting [or 'relating to'] the assembly (or 'to a question of the privileges of the assembly')". *Id.* at p. 221.

17.     A point of order is used when "a member thinks that the rules of the assembly are being violated . . . thereby calling upon the chair for a ruling and an enforcement of the regular rules." *Id.* at Ch. VIII, Section 23, p. 240. A point of order has strict timeliness requirements that require it to be raised at the time the breach occurs. *Id.* at p. 243. To raise a point of order, a member "rises and, without waiting for recognition, immediately addresses the chair as follows: "MEMBER A: I rise to a point of order. [Or, 'Point of Order!']." *Id.* at pp. 244-245. Anyone who is speaking takes his seat and the chair asks the member to state his point of order, to which the member then says "MEMBER A: I make the point of order that . . ." *Id.* at p. 245.

18.     Furthermore, a member must appeal an adverse ruling on the above two parliamentary motions at the time, or the member cannot later complain of the same. *Robert's Rules* is clear that "[m]embers have no right to criticize a ruling of the chair unless they appeal from his decision." *Id.* at Ch. VIII, Section 24, p. 247. In order to appeal, a member of the body makes—or "takes"—the appeal and it must be seconded by another member. *Id.* The question is then taken from the Chair and vested in the body as a whole to decide on. *Id.*

---

http://www.hccs.edu/about-hcc/policies/information/board-bylaws/.     and     http://www.hccs.edu/about-hcc/board-of-trustees/board-information/board-bylaws/.

19.     The Plaintiff failed to raise one of the above required parliamentary motions by a question of privilege or a point of order and failed to appeal any adverse ruling on the same. *See* Ex C (verification of Trustee Eva Loredo that she has presided over each meeting of the Board in September and October of 2017 where a trustee participated via video conference and confirming that Trustee Wilson did not raise a point of order in accordance with Robert's Rules regarding any interpretation of Board meeting requirements and did not seek an appeal of an adverse ruling or failure to rule). By failing to raise the motion through *Robert's Rules of Order, Newly Revised*, the Plaintiff failed to meet the conditions precedent to complaining of the actions of the College or Board. Even if the Plaintiff had raised a motion, by failing to appeal a ruling on the same, the Plaintiff has foreclosed his right to contest the ruling at a later date.

20.     Accordingly, this Court should grant the plea to the jurisdiction regarding the Plaintiffs declaratory judgment action on the basis of governmental and legislative immunity. Alternatively, the Court should grant the plea on the basis there is no justiciable issue because a rule of the Board cannot limit what is authorized by statute and because Plaintiff failed to exhaust his administrative remedies.

### III.     **MOTION TO DISMISS**

21.     Under Texas Rule of Civil Procedure 91a, Defendant moves dismissal of each cause of action asserted by Plaintiff on the grounds that each has no basis in law or fact for all the reasons asserted in Section II, *supra*.

### IV.     **SPECIAL EXCEPTIONS**

22.     The Texas Rules of Civil Procedure require the Plaintiff to provide "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a). When a pleading is defective, the Texas Rules provide for special exceptions to call

notice to the insufficient or defective pleading. *See* TEX. R. CIV. P. 91. The Defendant specially excepts to the Plaintiff's Original Petition because it is deficient, for the reasons stated in the foregoing paragraphs, in the following respects:

    a. in paragraphs 2, 4-11 in that it has not alleged whether the suit is brought against the trustees in their official or individual capacities;

    b. in paragraphs 17-19 it has not alleged a unique basis for a declaratory judgment action so as to waive the Defendant's governmental immunity; and

    c. in paragraph 20 in that it has not alleged how it can recover attorney's fees if it prevails when such recover is barred by governmental immunity. The College retains immunity to attorney's fees unless such fees are recoverable under an independent statute which creates a substantive right to attorney's fees. *See Cty. of Galveston v. Triple B Servs., LLP*, 498 S.W.3d 176, 189–90 (Tex. App. – Houston [1st Dist.], 2016), rev. denied (2017).

## V.    __GENERAL DENIAL__

23.    Defendant asserts a general denial under Texas Rule of Civil Procedure 92. It denies each and every, all and singular, the material allegations made by the Plaintiff and requests strict proof of such allegation as is required by Texas law.

## VI.    __DEFENSES__

24.    In asserting the following defenses, HCC does not admit that the burden of proving the allegations or denials contained in the defenses is upon HCC, but, to the contrary, asserts that the burden of proving the facts relevant to many of the defenses and the burden of proving the inverse of the allegations contained in many of the defenses is upon the Plaintiff. Moreover, in asserting any defense, HCC does not admit any liability, but to the contrary,

specifically denies any and all allegations of liability in the Plaintiff's lawsuit. Without admitting liability as to any of the Plaintiff's causes of action, HCC asserts the following defenses:

a. Plaintiff has failed to state claims upon which relief can be granted, and more specifically, has failed to state a claim within the Court's jurisdiction.

b. Plaintiff's declaratory judgment act claim is barred by governmental immunity.

c. Plaintiff's suit and/or claims are precluded by sovereign, governmental, and/or legislative immunity.

d. The Plaintiff seeks damages that are not recoverable.

e. The Plaintiffs's claims are barred, in whole or in part, because HCC's actions, including the actions of its body corporate, related to the Plaintiff's claims were at all times in compliance and comportment all applicable laws, and were taken in good faith and for lawful, legitimate, and nondiscriminatory reasons.

f. Plaintiff intentionally engaged in conduct that is inconsistent with claiming a known right.

g. Plaintiff has failed to perform all conditions precedent to filing suit.

h. The Plaintiff's claims are barred, in whole or in part, to the extent the Plaintiff has failed to exhaust the administrative prerequisites for filing suit.

i. Defendant HCC reserves the right to assert additional defenses or affirmative defenses as they become apparent through discovery.

## VII.    HCC's REQUEST FOR COSTS AND ATTORNEY'S FEES

25.    Section 11.161 of the Texas Education Code allows independent school districts to recover reasonable attorneys' fees and costs if "(1) the court finds that the suit is frivolous, unreasonable, and without foundation; and (2) the suit is dismissed or judgment is for the

defendant." TEX. EDUC. CODE § 11.161. Section 11.161 is applicable to the Defendant, a community college, under Section 130.084 of the Texas Education Code.[4] A "frivolous" suit is generally understood to mean one that does not have a reasonable basis in law or fact. *See Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1991) (per curiam); *Thielemann v. Blinn Bd. of Trustees*, 01-14-00595-CV, 2015 WL 1247018, at *2 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, no pet.). Here, the above authority and arguments in this Plea establish that a public community college retains governmental immunity, and the Plaintiff has not properly pled a waiver of that immunity. Moreover, the Plaintiff failed to avail himself of the proper channels, as a trustee, to raise his complaints. Because Plaintiff has not met his burden, his suit is frivolous, and Defendant hereby asserts a request for costs and attorney's fees under Section 11.161 of the Texas Education Code.

## VIII.    HCC's REQUEST FOR DISCLOSURE

26.    Under authority of Texas Rule of Civil Procedure 194, HCC requests that the Plaintiff disclose, within 30 days of service of the Defendant's Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer, the information and/or material requested in Texas Rule of Civil Procedure 194.2(a)-(l).

## IX.    PRAYER

27.    For the foregoing reasons, Defendant HCC asks the Court to grant its First Amended Plea to the Jurisdiction and/or Motion to Dismiss regarding Plaintiff's claims, alternatively grant its special exceptions by requiring Plaintiff to replead to allege facts

---

[4] Section 130.084 of the Texas Education Code provides that the management and control of a junior college are governed by the general law governing the management and control of an independent school district.

supporting waiver of immunity, deny Plaintiff all relief requested, award the College its reasonable attorney's fees and costs, and award the College all other relief to which it is entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: _____

Arturo G. Michel
State Bar No. 14009440
amichel@thompsonhorton.com

Benjamin P. Wells
State Bar No. 24093341
bwells@thompsonhorton.com

Phoenix Tower
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6766
Facsimile: (713) 583-9397

**ATTORNEYS FOR HOUSTON COMMUNITY COLLEGE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been forwarded on this 20th day of November, 2017 to counsel of record for the Plaintiff by electronic service and/or certified mail as follows:

Mr. Keith A. Gross
The Law Office-of Keith A. Gross
250 Park Avenue
League City, TX 77573

/s/ Ben Wells
Benjamin P. Wells

931470_3

Exhibit A



**HOUSTON COMMUNITY COLLEGE**

# Board of Trustees
# Bylaws

## Adopted
## January 1, 2010

(Amended June 29, 2010)

(Amended September 23, 2010)

(Amended December 2, 2010)

(Amended November 17, 2011)

(Amended December 15, 2011)

(Amended June 21, 2012)

(Amended June 24, 2014)

(Amended November 18, 2014)

(Amended April 16, 2015)

(Amended April 21, 2016)

(Amended October 20, 2016)

(Amended June 15, 2017)

# BYLAWS OF THE
# BOARD OF TRUSTEES OF THE
# HOUSTON COMMUNITY COLLEGE

**Adopted January 1, 2010**

**Amended June 29, 2010**

**Amended September 23, 2010**

**Amended December 2, 2010**

**Amended November 17, 2011**

**Amended December 15, 2011**

**Amended June 21, 2012**

**Amended June 24, 2014**

**Amended November 18, 2014**

**Amended February 27, 2015**

**Amended April 16, 2015**

**Amended January 21, 2016**

**Amended February 25, 2016**

**Amended April 21, 2016**

**Amended June 16, 2016**

**Amended October 20, 2016**

**Amended June 15, 2017**

# Table of Contents

Preface

Mission

## ARTICLE A:  ETHICS

**Sec. 1.**      **Purpose**

**Sec. 2.**      **Distribution Policy**

**Sec. 3.**      **Applicability**

**Sec. 4.**      **Code of Conduct** *(Amended December 2, 2010; November 17, 2011)*

**Sec. 5.**      **Prohibited Communications/Political Contributions**
*(Amended September 23, 2010, November 17, 2011, December 15, 2011, June 21, 2012)*

**Sec. 6.**      **Limits on Repayment of Personal Loans** *(June 21, 2012)*

**Sec. 7.**      **Prohibited Benefits** *(Amended September 23, 2010)*

**Sec. 8.**      **Political Activities**

**Sec. 9.**      **Campaign Finance Reports** *(Amended January 21, 2016)*

**Sec. 10.**     **Misuse of Official Information**

**Sec. 11.**     **Mechanisms for Enforcement**
*(Amended November 17, 2011; November 18, 2014; January 21, 2016)*

## ARTICLE B:  POWERS OF THE BOARD

**Sec. 1.**      **Authority**

**Sec. 2.**      **Delegation of Authority in Emergency**

**Sec. 3.**      **Policy Direction**

**Sec. 4.**      **Board Leadership**

## ARTICLE C:  ELECTIONS

## ARTICLE D:  OFFICERS OF THE BOARD

**Sec. 1.**      **Election**

**Sec. 2.**      **Chair**

**Sec. 3.**      **Vice Chair**

**Sec. 4.**      **Secretary**

ARTICLE E:  PERSONNEL APPOINTED BY AND REPORTING DIRECTLY TO THE BOARD

Sec. 1.    **Appointments**

Sec. 2.    **Chancellor** *(Amended January 21, 2016)*

Sec. 3.    **External Auditor and Internal Auditor** *(Amended April 16, 2015, February 25, 2016)*

Sec. 4.    **Board Counsel and General Counsel** *(Amended February 27, 2014, February 25, 2016, June 16, 2016)*

Sec. 5.    **Financial Advisor** *(Amended February 25, 2016, June 15, 2017)*

ARTICLE F:  COMMITTEES

Sec. 1.    **General**

Sec. 2.    **Appointed Committees**

Sec. 3.    **Committee of the Whole Meetings** *(Amended June 24, 2014)*

Sec. 4.    **Standing Committees** *(Amended June 29, 2010, April 21, 2016)*

Sec. 5.    **Special/Ad Hoc Committees**

Sec. 6.    **Appointments to Outside Entities**

Sec. 7.    **Community Advisory Committees**

ARTICLE G:  GENERAL BOARD MEETINGS

Sec. 1.    **Open Meetings**

Sec. 2.    **Definitions**

Sec. 3.    **Time and Location** *(Amended December 2, 2010)*

Sec. 4.    **Notice**

Sec. 5.    **Voting** *(Amended April 16, 2015)*

Sec. 6.    **Order of Business**

Sec. 7.    **Agenda** *(Added April 16, 2015, June 15, 2017)*

Sec. 8.    **Rules of Order**

Sec. 9.    **Minutes and Recordings**

Sec. 10.   **Special Meetings**

Sec. 11.   **Closed Meetings/Executive Session**

Sec. 12.   **Prohibitions**

Sec. 13.    **Citizen Participation**

Sec. 14.    **Disruption**

Sec. 15.    **Social Functions and Related Events**

# ARTICLE H: BOARD OPERATIONS

Sec. 1.    **Evaluation**

Sec. 2.    **Efficiency**

Sec. 3.    **Expenditures** *(Amended September 23, 2010; Amended December 13, 2012)*

                  **Board Account for Community Affairs Request Form**

Sec. 4.    **Public Statements and the Media** *(Amended January 21, 2016)*

Sec. 5.    **Training** *(Amended September 23, 2010; Amended November 17, 2011; January 21, 2016)*

Sec. 6.    **Self-Assessment of the Board**

Sec. 7.    **Requests for Information** *(Amended October 20, 2016)*

Sec. 8.    **Requests for Documents** *(Amended January 21, 2016)*

Sec. 9.    **Requests for Legal Advice** *(Amended January 21, 2016)*

Sec. 10.    **Board Member Complaints** *(Amended January 21, 2016)*

# EXHIBITS

Exhibit A.    **Houston Community College Board of Trustees and Senior Staff Conflict of Interest Certification**

Exhibit B.    **Code of Ethics Complaint Form**

Exhibit C.    **HCC Trustee Board Account for Community Affairs Request**

Exhibit D.    **Request to Access Official College Records**

Exhibit E.    **Board member Complaint Form**

# Article G:  General Board Meetings

Responsible Board Committee:    Board Governance

Responsible Department/Group:  Board of Trustees

---

**1.    OPEN MEETINGS.**  The Board shall hold regular meetings for purposes of handling College business. All meetings shall be held in compliance with the Texas Open Meetings Act.  Citizens are welcome to attend meetings of the Board.  Trustees shall adhere to the Board Code of Conduct and promote Board Leadership at all times.

**2.    DEFINITIONS.**

**A "meeting" occurs when:**

    a.    A quorum of members of the Board deliberate with each other or with any other person; and

    b.    Such quorum discusses, considers, or takes formal action on public business or public policy that the Board supervises or controls.

"Deliberation" means an exchange, verbal, electronic or otherwise, between a quorum of Board members (or between them and any other person) concerning any issue within the jurisdiction of the Board or any public business.

No deliberation that affects public business is allowed to take place in any setting other than a duly posted meeting of a quorum of Board members.

**3.    TIME AND LOCATION.**  Unless otherwise provided, the regular meeting of the Board shall be held on the third Thursday of each month at the HCC Building, 3100 Main Street. Such meetings may be recessed from day to day until the completion of business. The time for special and emergency meetings of the Board shall be as stipulated in the notice for the meeting.

**4.    NOTICE.**    Written notice of all meetings shall be posted at the central administration building and the  website by the Board Services Office.  Furthermore, notice shall be furnished for posting to the Harris County Clerk, the Fort Bend County Clerk, and upon request, to the media. Notice of all meetings shall provide for the possibility of a closed or executive session during an open meeting, as provided by law.

**5.    VOTING.**  Each Trustee's vote, or failure to vote, shall be recorded by name. Only Trustees present in person may vote. Absent Trustees may listen to the proceedings by electronic media, but may not vote on the proceedings. No proxy votes shall be allowed.  Other than situations in which a two-thirds vote is required, a majority vote of the total membership of the Board will be required in order for the Board to act.

6. **ORDER OF BUSINESS**. The Board Chair and the Chancellor shall decide the order of business for meetings. (See HCC POLICY MANUAL)

7. **AGENDA**. At the direction of the Board chair, the Chancellor shall prepare and present an agenda at least 7 calendar days prior to the regular Board meeting, having followed the agenda preparation process established by the Board. An item shall be added to the agenda by the written request of three (3) Trustees submitted to the Chancellor or Board Chair at least seven (7) days prior to the meeting.

Either the Board Chair or the Chancellor, at his or her discretion, may pull any item noticed for discussion and/or action from the agenda without further action by the Board unless that item has been added by the written request of three (3) Trustees, in accordance with the procedures outlined above.

Copies of the electronic agenda and related materials shall be delivered to Board members by Board Services. Paper copies of the agenda and related materials shall be delivered to Board members upon a written request submitted to Board Services.

8. **RULES OF ORDER**. Robert's Rules of Order (most current edition) shall constitute the rules of procedure applicable to all meetings of the Board, when not in conflict with any provisions of law or these bylaws. The Board may suspend the rules, as needed, by a two-thirds vote of the composition of the full Board.

9. **MINUTES AND RECORDINGS**. The Board shall prepare and keep minutes and/or make a tape recording of each open meeting. The minutes and tapes are public records and shall be available for public inspection and copying upon request to the Board office. Any person in attendance can make an audio or video recording of any or all of an open meeting, subject to reasonable rules adopted by the Board to maintain order.

10. **SPECIAL MEETINGS**. Special meetings of the Board may be called by either the Chair at his/her own discretion, or by the independent requests of three (3) Trustees who must call for the meeting in writing, specifying the date, time, place, and purpose of the meeting. Special meetings must be duly posted.

11. **CLOSED MEETINGS/EXECUTIVE SESSION**. Trustees, employees and agents of the College shall not divulge to any person the substance of matters discussed at any closed meeting, except as otherwise required or allowed by law. Closed meetings shall be held as allowed by law to have discussions and deliberations of College matters that cannot be made public. A further objective would be to protect the attorney-client privilege recognized by law.

12. **PROHIBITIONS**. No Board member shall knowingly call or aid in calling or organizing a closed meeting that is not permitted under the Open Meetings Act. No Board member shall knowingly close or aid in closing a regular meeting to the public (except as permitted under the Open Meetings Act). No Board member shall participate in a closed meeting that is not permitted under the Open Meetings Act.

**13. CITIZEN PARTICIPATION.** The Board shall provide opportunities at its meetings for citizens to address the Board, but shall impose reasonable restraints on the number, length, and frequency of presentations, so long as it does not unfairly discriminate among views seeking expression.

**14. DISRUPTION.** It is a criminal offense for a person, with intent to prevent or disrupt a lawful meeting, to substantially obstruct or interfere with the meeting by physical action or verbal utterance. The Board may immediately remove from the meeting any person causing a substantial disruption.

**15. SOCIAL FUNCTIONS AND RELATED EVENTS.** The Board may congregate for social functions, such as meals or festivities, but shall refrain from discussing issues under consideration by the Board for a Board vote. Trustees may gather in a quorum at a social function unrelated to the public business of the College, or at a regional, state or national convention or workshop, if formal action is not taken. Such gatherings are not "meetings" under the law and no public notice is required to attend such gatherings. (Tex. Govt. Code 551.001)

# Exhibit B

**MEETING PLACE AND TIME**

The notice for a Board meeting shall reflect the date, time, and location of the meeting.

**REGULAR MEETINGS**

Regular meetings of the Board shall typically be held on the third Thursday of each month at the HCC Building, 3100 Main Street. Such meetings may be recessed from day to day until the completion of business. When determined necessary and for the convenience of Board members, the Board Chair may change the date, time, or location of a regular meeting with proper notice. [See Board Bylaws, Article G, Section 3]

**SPECIAL OR EMERGENCY MEETINGS**

The Board Chair shall call a special meeting at the Board Chair's discretion, or by the independent requests of three (3) members of the Board who must call for the meeting in writing, specifying the date, time, place, and purpose of the meeting. Special meetings must be duly posted. [See Board Bylaws, Article G, Section 10]

The Board Chair shall call an emergency meeting when it is determined by the Board Chair, or by the independent requests of three (3) members of the Board that an emergency or urgent public necessity, as defined by law, warrants the meeting. Emergency meetings must be duly posted.

**AGENDA**

**PREPARATION**

At the direction of the Board Chair, the Chancellor shall prepare and present an agenda at least seven (7) calendar days prior to the regular Board meeting, having followed the agenda preparation process established by the Board. [See Board Bylaws, Article G, Section 7]

**SUBMISSION OF TOPICS**

An item shall be added to the agenda by the written request of three (3) Board members submitted to the Chancellor or Board Chair at least seven (7) days prior to the meeting.

Either the Board Chair or the Chancellor, at his or her discretion, may pull any item noticed for discussion and/or action from the agenda without further action by the Board unless that item has been added by the written request of three (3) Board members, in accordance with the procedures outlined above.[See Board Bylaws, Article G, Section 7]

**CONSENT AGENDA**

When the agenda is prepared, the Board Chair shall determine items, if any, that qualify to be placed on the consent agenda. A consent agenda shall include items of a routine and/or recurring nature, as well as committee recommendations, grouped together under one action item.

For each item listed as part of a consent agenda, the Board shall be furnished with background material. All such items shall be act-

ed upon by one vote without separate discussion, unless a Board member requests that an item be withdrawn for individual consideration. The remaining items shall be adopted under a single motion and vote.

**NOTICE TO MEMBERS**

Members of the Board shall be given notice of regular and special meetings at least 72 hours prior to the scheduled time of the meeting and at least two hours prior to the time of an emergency meeting.

**CLOSED MEETING**

Notice of all meetings shall provide for the possibility of a closed meeting during an open meeting, as provided by law. The Board may conduct a closed meeting when the agenda subject is one that may properly be discussed in closed meeting.

Trustees, employees, and agents of the College District shall not divulge to any person the substance of matters discussed at any closed meeting, except as otherwise required or allowed by law. Closed meetings shall be held as allowed by law to have discussions and deliberations of College matters that cannot be made public. A further objective would be to protect the attorney-client privilege recognized by law.

[See BDA and Board Bylaws, Article G, Section 11]

**ORDER OF BUSINESS**

The Chancellor and the Board Chair shall decide the order of business for meetings.

**RULES OF ORDER**

The Board shall observe the parliamentary procedures as found in *Robert's Rules of Order, Newly Revised,* except as otherwise provided in Board procedural rules or by law. Procedural rules may be suspended at any Board meeting by a two-thirds vote of the entire membership of the Board.

**VOTING**

Voting shall be by voice vote or show of hands, as directed by the Board Chair. Each member's vote, or failure to vote, shall be recorded by name. Only members present in person may vote. Absent members may listen to the proceedings by electronic media, but may not vote on the proceedings. No proxy votes shall be allowed. Other than situations in which a two-thirds vote is required, a majority vote of the total membership of the Board will be required in order for the Board to act. [See Board Bylaws, Article G, Section 5]

**MINUTES**

The Board shall prepare and keep minutes and/or make a tape recording of each open meeting. The minutes and tapes are public records and shall be available for public inspection and copying upon request to Board Services. Any person in attendance can make an audio or video recording of any or all of an open meeting, subject to reasonable rules adopted by the Board to maintain order. [See Board Bylaws, Article G, Section 9]

**DISCUSSIONS AND LIMITATION**

Discussions shall be addressed to the Board Chair and then the entire membership. Discussion shall be directed solely to the business currently under deliberation, and the Board Chair shall halt discussion that does not apply to the business before the Board.

The Board Chair shall also halt discussion if the Board has agreed to a time limitation for discussion of an item, and that time limit has expired. Aside from these limitations, the Board Chair shall not interfere with debate so long as members wish to address themselves to an item under consideration.

Exhibit C

| STATE OF TEXAS | § |
| COUNTY OF HARRIS | § |
| | § |

## **DECLARATION OF FACTS**

My name is Eva Loredo, I am over 18 years of age, and my address is Houston Community College, care of Board Services, 3100 Main St., Houston, TX. 77002.  I am the Chair of the Board of Trustees ("Board") of the Houston Community College System ("College") and have held that position throughout the 2017 calendar year. I presided over each meeting of the Board in September and October of 2017 where a trustee participated in a meeting by videoconference. I declare under penalty of perjury that the facts in paragraph 19 of the foregoing pleading are true and correct.

Executed in Harris County, State of Texas, on the 17th day of November, 2017.

_____
Eva Loredo

Declarant



EXHIBIT 4

CAUSE NO. 2017-67357

| | | |
|---|---|---|
| DAVID BUREN WILSON, TRUSTEE | § | IN THE DISRICT COURT |
| Plaintiff | § | |
| v. | § | |
| | § | |
| HOUSTON COMMUNITY COLLEGE | § | |
| SYSTEM, CAROLYN EVANS- | § | |
| SHABAZZ, CHAIR, PRETTA | § | |
| VANDIBLE STALLWORTH, VICE | § | 270TH DISTRICT COURT |
| CHAIR, ZEPH CAPO, SECRETARY, | § | |
| JOHN HANSEN, TRUSTEE, ADRIANA | § | |
| TAMEZ, TRUSTEE, ROBERT GLASER, | § | |
| TRUSTEE, NEETA SANE, TRUSTEE, | § | |
| AND EVA LOREDO, TRUSTEE | § | |
| Defendants | § | HARRIS COUNTY, TEXAS |

PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONRORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, David Buren Wilson, Trustee for Houston Community

College and files this his First Amended Original Petition and respectfully shows:

### I.     Discovery

1.    Plaintiff requests that discovery be conducted under level three.

### II.     Parties

**2.     PLAINTIFF, DAVID WILSON** is a natural person and Trustee for

Houston Community College Systems.    Service may be affect though the

undersigned attorney.

**3.     DEFENDANT, HOUSTON COMMUNITY COLLEGE SYSTEMS** is a

political subdivision and may be served   by and through   its chancellor, Cesar

Maldonado. Service may be accomplished per Rule 21(a).

4.     **DEFENDANT, EVA LOREDO, TRUSTEE** for Houston Community College System. Service may be affected anywhere she may be found.

5.     **DEFENDANT, PRETTA VANDIBLE STALLWORTH, TRUSTEE, VICE CHAIR** for Houston Community College System. Service may be affected anywhere she may be found.

6.     **DEFENDANT, CAROLYN EVANS-SHABAZZ, TRUSTEE AND CHAIR** for Houston Community College System. Service may be affected anywhere she may be found.

7.     **DEFENDANT, ADRIANA TAMEZ, TRUSTEE** for Houston Community College Systems. Service may be affected anywhere she may be found.

8.     **DEFENDANT, ROBERT GLASER, TRUSTEE** for Houston Community College System. Service may be affected anywhere he may be found.

9.     **DEFENDANT, NEETA SANE, TRUSTEE** for Houston Community College System. Service may be affected anywhere she may be found.

10.     **DEFENDANT, ZEPH CAPO, TRUSTEE AND SECRETARY** for Houston Community College System. Service may be affected anywhere he may be found.

11.     **DEFENDANT, JOHN HANSEN** for Houston Community College System. Service may be affected anywhere he may be found.

### III.     Venue and Jurisdiction

12.    Venue and Jurisdiction is proper in Harris County, Texas.

## IV.    Facts

13.    Houston Community College System is a political subdivision of the State of Texas that is managed, controlled, and otherwise operated by a Board of Trustees consisting of nine trustees.    The office of Houston Community College System Trustee is an elected position where each Trustee was elected to represent the interest of the people of a specific district.  Trustee Wilson was elected to office in November 2013.  Each Trustee is considered to be a political figure for purposes of the First Amendment, Right of Free Speech.

14.    On or about January 2010, the Houston Community College System Board of Trustees adopted its modification of the Board Bylaws. The Board Bylaws codify the rules and regulations in which the College and the Board of Trustees conduct its business. Article ·"G" of the Board By-laws governs the  General  Board  Meeting. Article G(5) provides:

> "VOTING: Each Trustee's vote, or failure to vote,  shall  be recorded by name. Only Trustees present in person may vote. Absent Trustees may listen to the proceedings by electronic media, *but may not vote* on the  proceedings. No proxy votes shall be allowed. Other than situations in which  a  two-thirds  vote  is required,  a  majority  vote  of the total membership of the Board will be required  in order for the Board  to  act."

15.    Based on reasonable belief, Trustee Wilson/Plaintiff asserts that all Houston Community  College  Trustees  received  proper  training  that  affirmatively

interpreted affirmed Article G(5) to prohibit absentee voting, and that only board members present in person are eligible to vote on any matter before the board/Board.

16. On or about September 22, 2017, a Borad meeting convened. Trustee and Vice Chair Carolyn Evans-Shabazz was not physically present. Trustee Evan-Shabazz was permitted to appear and participated in the meeting, via video conference. Participation included casting her vote on each agenda item. Trustee Wilson objected to her participation/voting on matters before the Board, and asserted that Trustee Evan-Shabazz could not vote on any board agenda item, as it violated the Board's Bylaws. Regardless, Trustee Evans-Shabazz cast her votes, and such votes were officially recorded tallied along with the votes of the other Trustees. The act of a Trustee voting, and having the vote counted is an administrative or ministerial act, and not a discretionary act.

17. The Defendants refused to comply with its own Bylaws when they permitted another Trustee to participate and vote at a Board meeting where she was not physically present as required by the Bylaws of the Board. Defendants' conduct was contrary to the Bylaws, constituted selective enforcement, or renders the enforcement of Article G(5) arbitrary, capricious and unenforceable.

18. On or about October 19, 2017 Trustee Wilson filed a lawsuit in the Harris County District Court requesting that it provide an interpretation as to Article G(5) in light of the use of the word "may" in the Article as opposed to the word "shall." Ordinarily, the word "may" in a statute means discretionary compliance, and the

word "shall" means mandatory compliance. Thus, the Board's acceptance of Trustee Evans-Shabazz's vote impliedly interpreted Article G(5) to mean that a Trustee's physical appearance as a requisite to participation and voting at a Board meeting was discretionary. The Board's implied interpretation undermined its prior course of conduct. Trustee Wilson filed suit after the Board to resolve the ambiguity in the Article. Trustee Wilson's lawsuit benefits all the Board members so that the Bylaws may have a uniform interpretation.

19. After filing the lawsuit, Houston Community College conducted its regular Board meeting on or about October 12, 2017. During the course of the meeting, the Board convened into executive session. The executive session is not open to the general public, but is limited to the Board members, the chancellor and legal counsel. However, the Board attorney, Melissa Mihalick and the Chair of the Board, Eva Lorado specifically excluded Trustee Wilson from executive session, citing a conflict of interest between Trustee Wilson and the Board. This action labeled Trustee Wilson as an adversarial party to the Board when in fact he was, and is a duly-elected member of the Board of HCC, who solely seeks good governance.

20. Trustee Wilson's lawsuit sought a uniform interpretation of Article G(5) and was not an adversarial proceeding, and not a proceeding in which Trustee Wilson could be excluded from performing his elected duties. Among Trustee Wilson's elected duties is the duty to vote and decide whether Article G(5) requires a Trustee's presence. Trustee Wilson sought no personal gain for the prior

5

lawsuit, nor had he a personal interest at stake.

21.     By excluding Trustee Wilson from the executive session, Defendant's prohibited Trustee Wilson from performing his duties to his electorate, to his oath of office, and to the HCC institution. Defendants deprived Trustee Wilson, the right of freedom of association, and deprived the people of District 2, their right to representation.

22.     On January 18, 2018, Trustees, **EVA LOREDO, CAROLYN EVANS-SHABAZZ, ADRIANA TAMEZ, NEETA SANE and ZEPH CAPO** of HCC convened in a regularly scheduled session and under color of law, voted to censure Trustee Wilson for exercising his First Amendment right of Free Speech contrary to the customs, rules, or regulations of HCC.

23.     HCC and the above Trustees contend it is a custom, rule, or regulation imposed on all Trustees, that each Trustee has a duty to show respect for the Board's collective decision-making process, engage in open and honest discussions in making Board decisions, respect the difference of opinions among the other Trustees, and interact with fellow Board members in a way that creates and sustains mutual respect. HCC and the above named Trustees contend that Trustee Wilson violated HCC's customs, rules, or regulations by committing the following acts:

    a.      initiating robo calls regarding other board members, conducting an interview with a local news station regarding his criticisms of other Trustees;

    b.      publishing information on a website created by Wilson that purported

exposed unethical or illegal conduct of various Trustees;

c. hiring a private investigator to determine the residence of Trustee, Adriana Tamez on grounds that Tamez did not reside in the district for which she hold's office;

d. for bringing a lawsuit against HCC after Wilson exposed HCC for violating its own Bylaws;

e. for bringing a second lawsuit after HCC banned Wilson from participating in executive session where the Trustees would deliberate whether to amend its Bylaws regarding participating and voting via teleconference;

f. for establishing a website that referenced HCC's name;

g. hiring a private investigator to investigate HCC without HCC's consent; and

h. repeatedly acted in a manner not consistent with the best interests of the College or the Board, and in violation of the Bylaws;

24. HCC and Trustees, **EVA LOREDO, CAROLYN EVANS-SHABAZZ, ADRIANA TAMEZ, NEETA SANE and ZEPH CAPO** adopted a resolution that censured Trustee Wilson for the above referenced conduct. The resolution declared Trustee Wilson ineligible for election to Board Officer positions for the 2018 calendar year and ineligible for reimbursement for any College-related travel, any request for access to the funds in his Board account for community affairs. Further, HCC and Trustees, **EVA LOREDO, CAROLYN EVANS-SHABAZZ, ADRIANA TAMEZ, NEETA SANE and ZEPH CAPO** directed Wilson to cease and desist from similar conduct or face further disciplinary action.

25. HCC now, under color of law, treats Trustee Wilson different than other Trustees

similarly situated flowing from the exercise of his First Amendment Right of free speech, access to the court, and freedom of association.

26.     On reasonable belief, Trustees are not within the scope of their authority to censure another Trustee for acts, or omissions protected by the First Amendment of the United State's Constitution.

## V.     Adoption by Reference

27.     Trustee Wilson hereby adopts by reference Exhibit No. 1, Resolution of Censure into each part of Plaintiff's First Amended Original Petition.

## VI.     Causes of Action.

### Cause of Action No. 1:

28.     Trustee, David Wilson hereby sues Defendants for declaratory judgment and injunctive relief in accordance with the allegations above. Wilson requests the Court determine his rights, and responsibilities under HCC's Bylaws and determine whether he may be excluded from executive session to determine HCC's policies for absentee voting.

### Cause of Action No. 2:

29.     Wilson sues HCC and Trustees, **EVA LOREDO, CAROLYN EVANS-SHABAZZ, ADRIANA TAMEZ, NEETA SANE and ZEPH CAPO** under section 42 U.S.C. § 1983 for their joint and several violations of Trustee Wilson's civil rights under the United States Constitution arising from the exercise of his First Amendment of Free Speech.

30.     The duty for one Trustee to show respect for the Board's collective decision-making process, engage in open and honest discussions in making Board decisions, respect the difference of opinions among the other Trustees, and interact with fellow Board members in a way that creates and sustains mutual respect, as applied to Trustee Wilson, was interpreted overly broad and implicates a fundamental right and should be reviewed under a strict scrutiny standard.

31.     HCC and the above referenced Trustees should be enjoined from enforcing the Resolution of Censure.

**Cause of Action No. 3:**

32.     Wilson sues HCC and Trustees, **EVA LOREDO, CAROLYN EVANS-SHABAZZ, ADRIANA TAMEZ, NEETA SANE and ZEPH CAPO** under section 42 U.S.C. § 1983 for their joint and several violations of Trustee Wilson's civil rights under the United States Constitution arising from the Equal Protection Clause.

33.     The duty for one Trustee to show respect for the Board's collective decision-making process, engage in open and honest discussions in making Board decisions, respect the differences of opinions among the other Trustees, and interact with fellow Board members in a way that creates and sustain mutual respect, as applied to Trustee Wilson was interpreted overly broad, and implicates a fundamental right and should be reviewed under a strict scrutiny standard.

34.     HCC and the above referenced Trustees should be enjoined from enforcing the Resolution of Censure.

## VII. Capable of Repetition

35.     The above causes of action are capable of repetition, but still evading review.

## VIII. Exhaustion of State Law Remedies

36.     Trustee Wilson has either  exhausted his state law remedies, or state law

remedies are insufficient to redress the harm caused to Wilson.

## IX. Damages

37.     Wilson   hereby sues for $10,000.00 in damages for mental anguish, and

$10,000.00 in punitive damages and  for his reasonable and  necessary attorney fees.

## Prayer

Plaintiff prays that Defendants be cited to appear and upon a final hearing,

declare the rights and responsibilities of the parties and any other relief, whether

general or special, legal or equitable, award Wilson his reasonable and  necessary

attorney fees.

The Law Office of Keith A. Gross

By:

Keith A. Gross
State Bar No. 24027357
250 Park Avenue
League City, Texas 77573
Phone: 832-932-5970
Fax: 832-932-5688
attnykgross@aol.com
Attorney for Plaintiff

Certificate of Service

I certify that a true and correct copy of the foregoing instrument was served on

opposing counsel in accordance with the Texas Rules of Civil Procedure on February 7,

2018.

Keith A Gross

### RESOLUTION OF CENSURE

WHEREAS, Houston Community College ("College") Board of Trustees ("Board") member, Mr. David Wilson, has used public media to criticize other Board members for taking positions that differ from his own, including an April 19, 2017 robocall initiated by Mr. Wilson to the constituents of other Board members, and (2) an April 20, 2017 interview with a local radio station in which he identified Board members who voted in favor of a transaction that he opposed and accused those Board members of "not representing the people in their district." In doing so, Mr. Wilson has demonstrated a lack of respect for the Board's collective decision-making process, a failure to encourage and engage in open and honest discussions in making Board decisions, and a failure to respect differences of opinion among Trustees; and

WHEREAS, Mr. Wilson regularly publishes information on a website that he created and maintains, alleging that other Board members have engaged in unethical and/or illegal conduct, without facts to support his allegations. In doing so, Mr. Wilson has demonstrated a lack of respect for the Board's collective decision-making process and a failure to encourage and engage in open and honest discussions in making Board decisions, and a failure to respect differences of opinion; and

WHEREAS, on at least two separate occasions, Mr. Wilson hired personal investigators to conduct surveillance of Trustee Adriana Tamez. In doing so, Mr. Wilson has failed to interact with fellow Board members in a way that creates and sustains mutual respect; and

WHEREAS, Mr. Wilson filed a lawsuit against the College and Board members, complaining of the interpretation of Board Bylaws and state law regarding the ability of Board members to participate in meetings remotely. In filing this lawsuit, Mr. Wilson demonstrated a lack of respect for the Board's collective decision-making process and caused the College to incur $20,983 in legal fees for the defense of the lawsuit to date; and

WHEREAS, Mr. Wilson filed a second lawsuit against the College and Board members, complaining of his exclusion from closed session pursuant to Texas Attorney General Opinion No. JM-1004. In filing this lawsuit, Mr. Wilson demonstrated a lack of respect for the Board's collective decision-making process and caused the College to incur $5,400 in legal fees for the defense of the lawsuit to date; and

WHEREAS, Mr. Wilson created and maintains a personal website www.davewilsonhcc.com that uses the College's name in violation of Board Policy BBF (Local); and

WHEREAS, in August 2017, Mr. Wilson hired an independent investigator to conduct an investigation of the Board and the College without the consent of the Board. In doing so, Mr. Wilson has demonstrated a lack of respect for the Board's collective decision-making process and a failure to encourage and engage in open and honest discussions in making Board decisions. These actions by Mr. Wilson also contributed to an inquiry by HCC's accrediting agency, the Southern Association of Colleges and Schools Commission on Colleges ("SACSCOC"). In a letter dated December 11, 2017, SACSCOC referenced a news article discussing Mr. Wilson's independent investigation, and requested the submission of evidence establishing that Mr. Wilson's actions were not indicative of a failure to comply with SACSCOC Core Requirement 4.1.d, which requires that the "members of the governing board are not controlled by a minority and act with authority only as a collective entity."



EXHIBIT

THEREFORE, BE IT RESOLVED THAT, because Mr. Wilson has repeatedly acted in a manner not consistent with the best interests of the College or the Board, and in violation of the Board Bylaws Code of Conduct, the Board finds that Mr. Wilson's conduct was not only inappropriate, but reprehensible, and such conduct warrants disciplinary action.

BE IT FURTHER RESOLVED THAT, Mr. David Wilson is hereby PUBLICLY CENSURED for his conduct. Such censorship is the highest level of sanction available to the Board under Texas law since neither Texas law nor board policy allow the Board to remove a Board member from elected office.

BE IT FURTHER RESOLVED THAT, Mr. Wilson is ineligible for election to Board officer positions for the 2018 calendar year. Further, for College fiscal year 2017-2018, Mr. Wilson is ineligible for reimbursement for any College-related travel, ~~and is also not authorized~~ access to the funds in his Board account for community affairs. The Board also recommends that Mr. Wilson complete additional training relating to governance and ethics. Mr. Wilson is directed by the Board to immediately cease and desist from all inappropriate conduct and any repeat of improper behavior by Mr. Wilson will constitute grounds for further disciplinary action by the Board.

*[handwritten: Any requests for will ~~be requested~~ to Board approval.]*

ADOPTED THIS _18_ day of _Jan._, 2018

_____
Chairman, Board of Trustees
Houston Community College

ATTEST:

_____
Secretary, Board of Trustees
Houston Community College

-2-

EXHIBIT 5

CAUSE NO. 2017-67357

| | | |
|---|---|---|
| DAVID BUREN WILSON, TRUSTEE, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HOUSTON COMMUNITY COLLEGE | § | |
| SYSTEMS, EVA LOREDO, CHAIR, | § | HARRIS COUNTY,TEXAS |
| CAROLYN EVANS-SHABAZZ, VICE | § | |
| CHAIR, JOHN HANSEN, TRUSTEE | § | |
| ADRIANA TAMEZ, TRUSTEE | § | |
| ROBERT GLASER, TRUSTEE | § | |
| NEEETA SANE, TRUSTEE | § | |
| CHRISTOPHER OLIVER, TRUSTEE and | § | |
| ZEPH CAPO, TRUSTEE | § | 270TH JUDICIAL DISTRICT |
| | § | |
| Defendants. | | |

## DEFENDANTS' CORRECTED SECOND AMENDED PLEA TO THE URISDICTION, MOTION TO DISMISS, SPECIAL EXCEPTIONS, AND ORIGINAL ANSWER

Defendants Houston Community College System ("HCC"), Trustees Eva Loredo ("Loredo"), Dr. Carolyn Evans-Shabazz ("Evans-Shavazz"), Dr. John Hansen ("Hansen"), Dr. Adriana Tamez ("Tamez"), Robert Glaser ("Glaser"), Neeta Sane ("Sane"), Zeph Capo ("Capo"), and Pretta Vandible Stallworth ("Stallworth") (all herein referred to as the Defendant, "HCC" or the "College")[1] file this Corrected Second Amended Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer to Plaintiff's First Amended Original Petition, and would respectfully show the Court the following:

---

[1] As noted in the Defendant's Special Exceptions, Plaintiff does not state that he brings claims against the HCC Trustees in their individual capacities. Because the allegations accuse Trustees only of taking legislative actions during a Board meeting, the claims necessarily are against the HCC Trustees in their official capacities. Because a claim against a governmental official in his official capacity is a claim against the entity itself, the Defendant will treat this lawsuit as a lawsuit against the College only and refer to a singular Defendant as Defendant, HCC, or College unless specifically named otherwise. *See Morgan v. City of Alvin*, 175 S.W.3d 408, 414 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.")

---

# I.   NATURE OF LAWSUIT

The Plaintiff, a member of the governing body of a community college, a political subdivision of Texas, chose to file a lawsuit against the College and his fellow Trustees concerning his disagreement with the position of a majority of the Board.  The Plaintiff's First Amended Original Petition requests declaratory and injunctive relief with respect to alleged violations of the Board of Trustees' Board Bylaws regarding absentee voting and his exclusion from an executive session.  It also asserts violations of the Equal Protection Clause of the United States Constitution and the First Amendment based on his exclusion from the executive session at issue, as well as the Board's decision to censure Wilson for committing various improper acts.  For several reasons, including governmental and legislative immunity, the court should dismiss Plaintiff's declaratory judgment claims.

# II.   STANDARD

1.     A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to the merits of the claim.  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  A movant may file a plea to the jurisdiction on any ground over which it claims the court has no subject matter jurisdiction.  *See City of Austin v. L. S. Ranch, Ltd.*, 970 S.W.2d 750, 752 (Tex. App.—Austin 1998, no pet.); *Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 254 (Tex. App.—San Antonio 1999, pet. denied); *State v. Benavides*, 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied).  In determining a jurisdictional question on a challenge to the plaintiff's pleadings, a trial court must, generally, not weigh the merits of the case, but instead consider only the pleadings and evidence pertinent to the jurisdictional question.  *County of Cameron v. Brown*, 80 S.W.3d 549, 555 556 (Tex. 2002) (citing *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001) and

*Blue*, 34 S.W.3d at 554).  Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law that is reviewed de novo. *Id.*

2.      Governmental immunity is a jurisdictional issue.  *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999); *see Tex. Parks & Wildlife Dep't v. Garrett Place, Inc.*, 972 S.W.2d 140, 143 (Tex. App.— Dallas 1998, no pet.).  If a governmental entity is entitled to governmental immunity, the trial court should grant the entity's plea to the jurisdiction.  *Jones,* 8 S.W.3d at 638.  The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject matter jurisdiction and must show that immunity has been waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Tex. Parks & Wildlife Dep't*, 972 S.W.2d at 140, 142–43.  Courts should be particularly concerned with jurisdictional challenges asserted by governmental entities, because the high cost of defending lawsuits is ultimately borne out by the public.  *See L.S. Ranch, Ltd.*, 970 S.W.2d at 753.

3.      Texas Rule of Civil Procedure Rule 91a allows a party to "move to dismiss a cause of action on the grounds that it has no basis in law or fact."  TEX. R. CIV. P. 91a.  "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought."  *Id.*  The purpose of Rule 91a is to allow the Court to quickly dispose of a baseless cause of action as a matter of law without considering any evidence.  *See* 2013 Cmt. to TEX. R. CIV. P. 91a.  Rule 91a's factual-plausibility standard is akin to a legal-sufficiency review.  *See In re Heaven Sent Floor Care*, 2016 WL 7230387, at *2 (Tex. App.—Dallas Dec. 14, 2016, no. pet.). Dismissal is appropriate under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought."  *Jones v. Shipley*, 2016 WL 7164051, at *1 (Tex.

App.—Houston [1st Dist.] Dec. 8, 2016, no. pet.) (citing to *In re Heaven Sent Floor Care*, 2016 WL 7230387; TEX. R. CIV. P. 91a). "Whether the dismissal standard is satisfied depends 'solely on the pleading of the cause of action.'" *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016). The pleadings are to be both construed liberally in favor of the non-movant and accepted as true, in order for a court to determine whether a cause of action has a basis in law. *Id.* (Higley, J. dissenting) (citing to *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Rule 91a has been likened to either a plea to the jurisdiction, *see City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016), or a federal motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) for failure "to state a claim upon which relief can be granted." *See, e.g. Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 186 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see also GoDaddy.com LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014).

## III.  ARGUMENT AND AUTHORITIES IN SUPPORT OF GRANTING PLEA TO THE JURISDICTION, MOTION TO DISMISS, AND SPECIAL EXCEPTIONS

### A.  Governmental Immunity

4.  A public junior college/community college is an agency of the State, and in exercising governmental functions, the community college is immune from suit and liability unless the legislature expressly waives sovereign immunity. Houston Community College is a public community college. *See generally* TEX. EDUC. CODE § 130.182 (defining the Houston Community College System service area) and § 130.084 (defining authority of HCC board of trustees); *see also* TEX. CIV. PRAC. & REM. CODE § 101.001(3)(A)-(B) (defining "governmental unit" to include any junior college district as a political subdivision of the state). With respect to public community colleges and public school districts, Texas law provides for absolute immunity from tort liability except those claims involving the negligent operation of a motor vehicle. *See*

TEX. CIV. PRAC. & REM. CODE § 101.051; *Wood v. Coastal Bend Coll.*, 2010 WL 2136621 (Tex. App.—Corpus Christi 2010, no pet.) (dismissing claim based on allegedly illegal tuition practices); *Looper v. Houston Community Coll.*, 2007 WL 4200642 at *5 (Tex. App.—Houston [14th Dist.] 2007, pet. den.); *Freeman v. Del Mar College*, 716 S.W.2d 729 (Tex. App.—Corpus Christi 1986, no writ).

5.      The Plaintiff's First Amended Original Petition brings a Uniform Declaratory Judgment Act ("UDJA") claim against the College regarding (i) an alleged failure to enforce the HCC Board's bylaws when Trustee Evan-Shabazz attended the meeting via videoconference and participated in voting in the same, and (ii) Plaintiff's alleged exclusion from an executive session. *See* Pl. 1st Am. Orig. Pet. at ¶ 28. The Plaintiff seeks this Court's interpretation of the College's bylaws as it relates to videoconferencing  and a determination of whether he may be excluded from executive sessions to determine HCC's policies for absentee voting.

6.      Plaintiff's declaratory judgment claims are barred by governmental immunity because case law is clear that HCC's immunity is not waived under the Declaratory Judgment Act for conduct alleged by the Plaintiff. *See, e.g.*, *State v. BP Am. Prod. Co*., 290 S.W.3d 345, 360 (Tex. App.—Austin, 2009) ("For this reason, the UDJA cannot be used as a vehicle to obtain declarations having the effect of establishing a right to relief against the State for which sovereign immunity has not been waived.").

7.      The Texas Supreme Court identifies two distinct types of UDJA actions against a local government for which immunity is waived. First, suits brought against government officials who act without legal or statutory authority in order to compel the officers to act within their official capacity.  *City of San Antonio v. Reed S. Lehman Grain, Ltd.*, 2007 WL 752197 (Tex. 2007).  Second, suits brought against governmental officials to establish a contract's validity, to

enforce performance under a contract, or to impose contractual liabilities. *Id.* The latter type is not at issue in this case.

8.    The Texas Supreme Court has held that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money." *City of El Paso v. Heinrich,* 284 S.W.3d 366, 372 (Tex. 2009). "However, to fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, **but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act** . . . as a technical matter, the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit on such claims. This rule derives from the premise that the acts of officials which are not lawfully authorized are not acts of the State." *Texas Department of Insurance v. Reconveyance Svcs., Inc.*, 306 S.W.3d 256 (Tex. 2010) (per curiam) (emphasis added) (internal citations and quotations omitted).

9.    The Plaintiff's petition does not focus on the constitutionality or statutory authority of the use of videoconferencing in the Texas Open Meetings Act in Texas Government Code Section 551.127, but instead the Plaintiff complains about the College's exercise of that statute conflicting with the College's own internal bylaws related to that matter. His claims can be considered allegations of a lack of legal authority or failure to perform a ministerial act only if failure to follow an internal Board regulation qualifies as such. For the following reasons, videoconference participation is legally authorized and does not involve a ministerial act. Further, with respect to Plaintiff's alleged exclusion from executive session, Plaintiff merely seeks a determination of whether he was correctly excluded from the executive session as an

adversarial party. While these reasons support governmental immunity, they also provide an independent basis to establish the lack of a viable claim.

**B.    Legislative Immunity**

10.    The only avenue permitted by *Heinrich* to waive governmental immunity, that the Trustees acted ultra vires, necessarily results in another immunity defense which is absolute, legislative immunity. *See, e.g. Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) ("This Court has recognized that individuals acting in a legislative capacity are immune from liability for those actions"); *see also Brown v. Lubbock Cnty. Comm'r Court*, 185 S.W.3d 499, 505 (Tex. App.—Amarillo 2005, no pet.) (holding that the members of the commissioners court had legislative immunity for their performance of legislative functions). The Plaintiff alleges nothing beyond Trustees participating in a Board meeting by discussing and taking action by vote of the Board.

**C.    Community College Bylaws Cannot Limit Statutory Authority**

11.    With respect to Plaintiff's complaints about videoconferencing, the College does not have the legislative authority to contravene state legislation. As a creation of the legislature, a public community college is controlled by statute. *See Tex. Atty. Gen. Op. DM-20*, 1991 WL 527433 (finding the Texas Higher Education Coordinating Board did not have authority to establish educational requirements for community college trustees because the qualifications for trustees to seek and hold office are set by statute, and setting additional requirements would be tantamount to adding to the statute).

12.    Texas Government Code Section 551.127 allows for the use of videoconferencing equipment so that a trustee may participate in his or her duties and rights, including participation in voting. The language of the statute gives members of a governing body the discretion to participate by videoconference under the proper conditions. The language does not grant a

government entity the power to decide whether videoconference participation should occur. "A member or employee of a governmental body may participate remotely in a meeting of the governmental body by means of a videoconference call . . .." Tex. Gov't Code, § 551.127 (a-1). Because the College cannot restrict that which is conferred by statute, the College's bylaw provision to the contrary cannot be given effect. In an analogous situation involving Open Meetings Act violations, an appellate court overturned the lower court's portion of an injunction prohibiting school trustees from the use of telephone conferences to discuss public business. *Hitt v. Mabry*, 687 S.W.2d 791, 796 (Tex. App.—San Antonio, 1985). Its rationale was that "[a] decree of injunction must not be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights." *Id.*

### D. Plaintiff Waived Complaint by Failing to Exhaust Appeal

13. "Texas courts generally do require a party to exhaust its administrative remedies before seeking judicial review of the decision of a governmental entity." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467–68 (5th Cir. 2004) (citing *Tex. Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477, 484–85 (Tex.2002)); *Tex. Educ. Agency v. Cypress–Fairbanks I.S.D.*, 830 S.W.2d 88, 89–90 & n. 1 (Tex.1992); *Tex. State Bd. of Exam'rs in Optometry v. Carp*, 162 Tex. 1, 343 S.W.2d 242, 246–47 (1961); *Firefighters' & Police Officers' Civil Serv. Comm'n v. Herrera*, 981 S.W.2d 728, 732 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Caspary v. Corpus Christi Downtown Mgmt. Dist.*, 942 S.W.2d 223, 226 (Tex. App.—Corpus Christi 1997, writ denied); *Bandera Downs, Inc. v. Alvarez*, 824 S.W.2d 319, 321 (Tex. App.—San Antonio 1992, no writ); s*ee also Glasscock Underground Water Conservation Dist. v. Pruit*, 915 S.W.2d 577, 580 (Tex. App.— El Paso 1996, no writ) ("In most instances, a party must exhaust available administrative

remedies before resorting to the courts.") (citing *Webb County Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex.1990)).

14.    The Fifth Circuit in *Eby* addressed a question of first impression in Texas, where exhaustion requirements were not statutory but found only in the local entity's own regulations. The court concluded, applying an *Erie* analysis, that the Texas Supreme Court, if faced with this situation, would hold that the plaintiff must first exhaust the administrative remedies provided in a governmental entity's regulations before pursuing a breach-of-contract action in a court of law.

15.    Robert's Rules of Order governs Board meeting conduct.  *See* Ex A at 2 (Board bylaw Article G(8) stating "Roberts Rules of Order (most current edition) shall constitute the rules of procedure applicable to all meetings of the Board, when not in conflict with any provisions of law or these bylaws."); *see also* Ex B at p. 2 of 3, "Rules of Order" (Board policy BD(LOCAL) stating: "[t]he Board shall observe the parliamentary procedures as found in *Robert's Rules of Order, Newly Revised*, except as otherwise provided in Board procedural rules or by law").[2]  If Plaintiff objected to Trustee conduct, he was required to raise a question of privilege or a point of order.

16.    A question of privilege is a *"device that permits a request or main motion relating to the rights and privileges of the assembly or any of its members* to be brought up for possible immediate consideration because of its urgency, while business is pending and the request or motion would otherwise be out of order."  *See Robert's Rules of Order Newly Revised*, 10th ed. (2000) at Section 19, pp. 216–17.  To raise a question of privilege, a member should

---

[2]Exhibits A and B come from the Defendant's policies, which are available on its governmental website at http://www.hccs.edu/about-hcc/policies/ and http://www.hccs.edu/about-hcc/board-of-trustees/board-information/board-bylaws/.

say: "I rise to a question of privilege affecting [or 'relating to'] the assembly (or 'to a question of the privileges of the assembly')". *Id*. at p. 221.

17. A point of order is used when "a member thinks that the rules of the assembly are being violated . . . thereby calling upon the chair for a ruling and an enforcement of the regular rules." *Id*. at Ch. VIII, Section 23, p. 240. A point of order has strict timeliness requirements that require it to be raised at the time the breach occurs. *Id*. at p. 243. To raise a point of order, a member "rises and, without waiting for recognition, immediately addresses the chair as follows: "MEMBER A: I rise to a point of order. [Or, 'Point of Order!']." *Id*. at pp. 244–45. Anyone who is speaking takes his seat and the chair asks the member to state his point of order, to which the member then says "MEMBER A: I make the point of order that . . .." *Id*. at p. 245.

18. Furthermore, a member must appeal an adverse ruling on the above two parliamentary motions at the time, or the member cannot later complain of the same. *Robert's Rules* is clear that "[m]embers have no right to criticize a ruling of the chair unless they appeal from his decision." *Id*. at Ch. VIII, Section 24, p. 247. In order to appeal, a member of the body makes—or "takes"—the appeal and it must be seconded by another member. *Id.* The question is then taken from the Chair and vested in the body as a whole to decide on. *Id*.

19. The Plaintiff failed to raise one of the above required parliamentary motions by a question of privilege or a point of order and failed to appeal any adverse ruling on the same. *See* Ex C (verification of Trustee Eva Loredo that she has presided over each meeting of the Board in September and October of 2017 where a trustee participated via video conference and confirming that Trustee Wilson did not raise a point of order in accordance with Robert's Rules regarding any interpretation of Board meeting requirements and did not seek an appeal of an adverse ruling or failure to rule) Plaintiff also failed to exhaust his administrative remedies with

respect to his exclusion from executive session. By failing to raise the motion through *Robert's Rules of Order, Newly Revised*, the Plaintiff failed to meet the conditions precedent to complaining of the actions of the College or Board. Even if the Plaintiff had raised a motion, by failing to appeal a ruling on the same, the Plaintiff has foreclosed his right to contest the ruling at a later date.

20. Accordingly, this Court should grant the plea to the jurisdiction regarding the Plaintiffs declaratory judgment action on the basis of governmental and legislative immunity. Alternatively, the Court should grant the plea on the basis there is no justiciable issue because a rule of the Board cannot limit what is authorized by statute and because Plaintiff failed to exhaust his administrative remedies.

## IV. MOTION TO DISMISS

21. Under Texas Rule of Civil Procedure 91a, Defendant moves dismissal of each cause of action asserted by Plaintiff on the grounds that each has no basis in law or fact for all the reasons asserted in Section III, *supr*a.

## V. SPECIAL EXCEPTIONS

22. The Texas Rules of Civil Procedure require the Plaintiff to provide "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a). When a pleading is defective, the Texas Rules provide for special exceptions to call notice to the insufficient or defective pleading. *See* TEX. R. CIV. P. 91. The Defendant specially excepts to the Plaintiff's First Amended Original Petition because it is deficient, for the reasons stated in the foregoing paragraphs, in the following respects:

    a.    it does not allege in ¶¶ 2 or 4–11 (or elsewhere) whether the suit is brought against the Trustees in their official or individual capacities;

b.    it does not alleged a unique basis for a declaratory judgment action so as to waive the Defendant's governmental immunity; and

c.    it does not allege in ¶ 37 how Plaintiff can recover attorney's fees or punitive damages if Plaintiff prevails when such recoveries are barred by governmental immunity.

## VI.    GENERAL DENIAL

23.    Defendant asserts a general denial under Texas Rule of Civil Procedure 92. It denies each and every, all and singular, the material allegations made by the Plaintiff and requests strict proof of such allegation as is required by Texas law.

## VII.    DEFENSES

24.    In asserting the following defenses, HCC does not admit that the burden of proving the allegations or denials contained in the defenses is upon HCC, but, to the contrary, asserts that the burden of proving the facts relevant to many of the defenses and the burden of proving the inverse of the allegations contained in many of the defenses is upon the Plaintiff. Moreover, in asserting any defense, HCC does not admit any liability, but to the contrary, specifically denies any and all allegations of liability in the Plaintiff's lawsuit. Without admitting liability as to any of the Plaintiff's causes of action, HCC asserts the following defenses:

a.    Plaintiff has failed to state claims upon which relief can be granted, and more specifically, has failed to state a claim within the Court's jurisdiction.

b.    Plaintiff's declaratory judgment act claim is barred by governmental immunity.

c.    Plaintiff's suit and/or claims are precluded by sovereign, governmental, and/or legislative immunity.

d.    The Plaintiff seeks damages that are not recoverable.

e. The Plaintiff's claims are barred, in whole or in part, because HCC's actions, including the actions of its body corporate, related to the Plaintiff's claims were at all times in compliance and comportment all applicable laws, and were taken in good faith and for lawful, legitimate, and nondiscriminatory reasons.

f. Plaintiff intentionally engaged in conduct that is inconsistent with claiming a known right.

g. Plaintiff has failed to perform all conditions precedent to filing suit.

h. The Plaintiff's claims are barred, in whole or in part, to the extent the Plaintiff has failed to exhaust the administrative prerequisites for filing suit.

i. The Plaintiff's claims are barred, in whole or in part, because they are moot.

j. Defendant HCC reserves the right to assert additional defenses or affirmative defenses as they become apparent through discovery.

## VIII.    HCC'S REQUEST FOR COSTS AND ATTORNEY'S FEES

25.    Section 11.161 of the Texas Education Code allows independent school districts to recover reasonable attorneys' fees and costs if "(1) the court finds that the suit is frivolous, unreasonable, and without foundation; and (2) the suit is dismissed or judgment is for the defendant." TEX. EDUC. CODE § 11.161.    Section 11.161 is applicable to the Defendant, a community college, under Section 130.084 of the Texas Education Code.[3]    A "frivolous" suit is generally understood to mean one that does not have a reasonable basis in law or fact. *See Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1991) (per curiam); *Thielemann v. Blinn Bd. of Trustees*, 01-14-00595-CV, 2015 WL 1247018, at *2 (Tex.

---

[3]Section 130.084 of the Texas Education Code provides that the management and control of a junior college are governed by the general law governing the management and control of an independent school district.

App.—Houston [1st Dist.] Mar. 17, 2015, no pet.). Here, the above authority and arguments in this Plea establish that a public community college retains governmental immunity from Plaintiff's declaratory judgment claims, and the Plaintiff has not properly pled a waiver of that immunity. Moreover, the Plaintiff failed to avail himself of the proper channels, as a trustee, to raise his complaints. Because Plaintiff has not met his burden, his declaratory judgment claims are frivolous, and Defendant hereby asserts a request for costs and attorney's fees under Section 11.161 of the Texas Education Code.

## IX.    PRAYER

26.    For the foregoing reasons, Defendants request that the Court grant their Second Amended Plea to the Jurisdiction and/or Motion to Dismiss regarding Plaintiff's declaratory judgment claims, alternatively grant its special exceptions by requiring Plaintiff to replead to allege facts supporting waiver of immunity, deny Plaintiff all relief requested, award the College its reasonable attorney's fees and costs, and award the College all other relief to which it is entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:_____
     Arturo G. Michel
     State Bar No. 14009440
     amichel@thompsonhorton.com

     Stephanie A. Hamm
     State Bar No. 24069841
     shamm@thompsonhorton.com

Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
Telephone: (713) 554-6767
Facsimile:  (713) 583-8884

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 8, 2018 a true and correct copy of the foregoing document has been served on all counsel of record for the Plaintiff by electronic service and/or certified mail as follows:

Mr. Keith A. Gross
The Law Office-of Keith A. Gross
250 Park Avenue
League City, TX 77573

/s/ Stephanie A. Hamm
Stephanie A. Hamm

4819-6806-3583, v. 1

# Exhibit A



**HOUSTON COMMUNITY COLLEGE**

# Board of Trustees Bylaws

## Adopted
## January 1, 2010

(Amended June 29, 2010)

(Amended September 23, 2010)

(Amended December 2, 2010)

(Amended November 17, 2011)

(Amended December 15, 2011)

(Amended June 21, 2012)

(Amended June 24, 2014)

(Amended November 18, 2014)

(Amended April 16, 2015)

(Amended April 21, 2016)

(Amended October 20, 2016)

(Amended June 15, 2017)

# BYLAWS OF THE
# BOARD OF TRUSTEES OF THE
# HOUSTON COMMUNITY COLLEGE

**Adopted January 1, 2010**

**Amended June 29, 2010**

**Amended September 23, 2010**

**Amended December 2, 2010**

**Amended November 17, 2011**

**Amended December 15, 2011**

**Amended June 21, 2012**

**Amended June 24, 2014**

**Amended November 18, 2014**

**Amended February 27, 2015**

**Amended April 16, 2015**

**Amended January 21, 2016**

**Amended February 25, 2016**

**Amended April 21, 2016**

**Amended June 16, 2016**

**Amended October 20, 2016**

**Amended June 15, 2017**

# Table of Contents

Preface

Mission


ARTICLE A: ETHICS

    **Sec. 1.**      **Purpose**

    **Sec. 2.**      **Distribution Policy**

    **Sec. 3.**      **Applicability**

    **Sec. 4.**      **Code of Conduct** *(Amended December 2, 2010; November 17, 2011)*

    **Sec. 5.**      **Prohibited Communications/Political Contributions** *(Amended September 23, 2010, November 17, 2011, December 15, 2011, June 21, 2012)*

    **Sec. 6.**      **Limits on Repayment of Personal Loans** *(June 21, 2012)*

    **Sec. 7.**      **Prohibited Benefits** *(Amended September 23, 2010)*

    **Sec. 8.**      **Political Activities**

    **Sec. 9.**      **Campaign Finance Reports** *(Amended January 21, 2016)*

    **Sec. 10.**      **Misuse of Official Information**

    **Sec. 11.**      **Mechanisms for Enforcement** *(Amended November 17, 2011; November 18, 2014; January 21, 2016)*


ARTICLE B: POWERS OF THE BOARD

    **Sec. 1.**      **Authority**

    **Sec. 2.**      **Delegation of Authority in Emergency**

    **Sec. 3.**      **Policy Direction**

    **Sec. 4.**      **Board Leadership**


ARTICLE C: ELECTIONS


ARTICLE D: OFFICERS OF THE BOARD

    **Sec. 1.**      **Election**

    **Sec. 2.**      **Chair**

    **Sec. 3.**      **Vice Chair**

    **Sec. 4.**      **Secretary**

## ARTICLE E:  PERSONNEL APPOINTED BY AND REPORTING DIRECTLY TO THE BOARD

**Sec. 1.**  **Appointments**

**Sec. 2.**  **Chancellor** *(Amended January 21, 2016)*

**Sec. 3.**  **External Auditor and Internal Auditor** *(Amended April 16, 2015, February 25, 2016)*

**Sec. 4.**  **Board Counsel and General Counsel** *(Amended February 27, 2014, February 25, 2016, June 16, 2016)*

**Sec. 5.**  **Financial Advisor** *(Amended February 25, 2016, June 15, 2017)*

## ARTICLE F:  COMMITTEES

**Sec. 1.**  **General**

**Sec. 2.**  **Appointed Committees**

**Sec. 3.**  **Committee of the Whole Meetings** *(Amended June 24, 2014)*

**Sec. 4.**  **Standing Committees** *(Amended June 29, 2010, April 21, 2016)*

**Sec. 5.**  **Special/Ad Hoc Committees**

**Sec. 6.**  **Appointments to Outside Entities**

**Sec. 7.**  **Community Advisory Committees**

## ARTICLE G:  GENERAL BOARD MEETINGS

**Sec. 1.**  **Open Meetings**

**Sec. 2.**  **Definitions**

**Sec. 3.**  **Time and Location** *(Amended December 2, 2010)*

**Sec. 4.**  **Notice**

**Sec. 5.**  **Voting** *(Amended April 16, 2015)*

**Sec. 6.**  **Order of Business**

**Sec. 7.**  **Agenda** *(Added April 16, 2015, June 15, 2017)*

**Sec. 8.**  **Rules of Order**

**Sec. 9.**  **Minutes and Recordings**

**Sec. 10.**  **Special Meetings**

**Sec. 11.**  **Closed Meetings/Executive Session**

**Sec. 12.**  **Prohibitions**

Sec. 13.     **Citizen Participation**

Sec. 14.     **Disruption**

Sec. 15.     **Social Functions and Related Events**

# ARTICLE H:  BOARD OPERATIONS

Sec. 1.      **Evaluation**

Sec. 2.      **Efficiency**

Sec. 3.      **Expenditures** *(Amended September 23, 2010; Amended December 13, 2012)*

           **Board Account for Community Affairs Request Form**

Sec. 4.      **Public Statements and the Media** *(Amended January 21, 2016)*

Sec. 5.      **Training** *(Amended September 23, 2010; Amended November 17, 2011; January 21, 2016)*

Sec. 6.      **Self-Assessment of the Board**

Sec. 7.      **Requests for Information** *(Amended October 20, 2016)*

Sec. 8.      **Requests for Documents** *(Amended January 21, 2016)*

Sec. 9.      **Requests for Legal Advice** *(Amended January 21, 2016)*

Sec. 10.     **Board Member Complaints** *(Amended January 21, 2016)*

# EXHIBITS

Exhibit A.   **Houston Community College Board of Trustees and Senior Staff Conflict of Interest Certification**

Exhibit B.   **Code of Ethics Complaint Form**

Exhibit C.   **HCC Trustee Board Account for Community Affairs Request**

Exhibit D.   **Request to Access Official College Records**

Exhibit E.   **Board member Complaint Form**

# Article G: General Board Meetings

Responsible Board Committee:    Board Governance

Responsible Department/Group:  Board of Trustees

---

**1.    OPEN MEETINGS.**  The Board shall hold regular meetings for purposes of handling College business. All meetings shall be held in compliance with the Texas Open Meetings Act.  Citizens are welcome to attend meetings of the Board.  Trustees shall adhere to the Board Code of Conduct and promote Board Leadership at all times.

**2.    DEFINITIONS.**

**A "meeting" occurs when:**

    a.    A quorum of members of the Board deliberate with each other or with any other person; and

    b.    Such quorum discusses, considers, or takes formal action on public business or public policy that the Board supervises or controls.

"Deliberation" means an exchange, verbal, electronic or otherwise, between a quorum of Board members (or between them and any other person) concerning any issue within the jurisdiction of the Board or any public business.

No deliberation that affects public business is allowed to take place in any setting other than a duly posted meeting of a quorum of Board members.

**3.    TIME AND LOCATION.**  Unless otherwise provided, the regular meeting of the Board shall be held on the third Thursday of each month at the HCC Building, 3100 Main Street. Such meetings may be recessed from day to day until the completion of business. The time for special and emergency meetings of the Board shall be as stipulated in the notice for the meeting.

**4.    NOTICE.**    Written notice of all meetings shall be posted at the central administration building and the  website by the Board Services Office.  Furthermore, notice shall be furnished for posting to the Harris County Clerk, the Fort Bend County Clerk, and upon request, to the media. Notice of all meetings shall provide for the possibility of a closed or executive session during an open meeting, as provided by law.

**5.    VOTING.**  Each Trustee's vote, or failure to vote, shall be recorded by name. Only Trustees present in person may vote. Absent Trustees may listen to the proceedings by electronic media, but may not vote on the proceedings. No proxy votes shall be allowed.  Other than situations in which a two-thirds vote is required, a majority vote of the total membership of the Board will be required in order for the Board to act.

6. **ORDER OF BUSINESS**. The Board Chair and the Chancellor shall decide the order of business for meetings. (See HCC POLICY MANUAL)

7. **AGENDA**. At the direction of the Board chair, the Chancellor shall prepare and present an agenda at least 7 calendar days prior to the regular Board meeting, having followed the agenda preparation process established by the Board. An item shall be added to the agenda by the written request of three (3) Trustees submitted to the Chancellor or Board Chair at least seven (7) days prior to the meeting.

Either the Board Chair or the Chancellor, at his or her discretion, may pull any item noticed for discussion and/or action from the agenda without further action by the Board unless that item has been added by the written request of three (3) Trustees, in accordance with the procedures outlined above.

Copies of the electronic agenda and related materials shall be delivered to Board members by Board Services. Paper copies of the agenda and related materials shall be delivered to Board members upon a written request submitted to Board Services.

8. **RULES OF ORDER**. Robert's Rules of Order (most current edition) shall constitute the rules of procedure applicable to all meetings of the Board, when not in conflict with any provisions of law or these bylaws. The Board may suspend the rules, as needed, by a two-thirds vote of the composition of the full Board.

9. **MINUTES AND RECORDINGS**. The Board shall prepare and keep minutes and/or make a tape recording of each open meeting. The minutes and tapes are public records and shall be available for public inspection and copying upon request to the Board office. Any person in attendance can make an audio or video recording of any or all of an open meeting, subject to reasonable rules adopted by the Board to maintain order.

10. **SPECIAL MEETINGS**. Special meetings of the Board may be called by either the Chair at his/her own discretion, or by the independent requests of three (3) Trustees who must call for the meeting in writing, specifying the date, time, place, and purpose of the meeting. Special meetings must be duly posted.

11. **CLOSED MEETINGS/EXECUTIVE SESSION**. Trustees, employees and agents of the College shall not divulge to any person the substance of matters discussed at any closed meeting, except as otherwise required or allowed by law. Closed meetings shall be held as allowed by law to have discussions and deliberations of College matters that cannot be made public. A further objective would be to protect the attorney-client privilege recognized by law.

12. **PROHIBITIONS**. No Board member shall knowingly call or aid in calling or organizing a closed meeting that is not permitted under the Open Meetings Act. No Board member shall knowingly close or aid in closing a regular meeting to the public (except as permitted under the Open Meetings Act). No Board member shall participate in a closed meeting that is not permitted under the Open Meetings Act.

**13. CITIZEN PARTICIPATION.** The Board shall provide opportunities at its meetings for citizens to address the Board, but shall impose reasonable restraints on the number, length, and frequency of presentations, so long as it does not unfairly discriminate among views seeking expression.

**14. DISRUPTION.** It is a criminal offense for a person, with intent to prevent or disrupt a lawful meeting, to substantially obstruct or interfere with the meeting by physical action or verbal utterance. The Board may immediately remove from the meeting any person causing a substantial disruption.

**15. SOCIAL FUNCTIONS AND RELATED EVENTS.** The Board may congregate for social functions, such as meals or festivities, but shall refrain from discussing issues under consideration by the Board for a Board vote. Trustees may gather in a quorum at a social function unrelated to the public business of the College, or at a regional, state or national convention or workshop, if formal action is not taken. Such gatherings are not "meetings" under the law and no public notice is required to attend such gatherings. (Tex. Govt. Code 551.001)

# Exhibit B

| | |
|---|---|
| **MEETING PLACE AND TIME** | The notice for a Board meeting shall reflect the date, time, and location of the meeting. |
| **REGULAR MEETINGS** | Regular meetings of the Board shall typically be held on the third Thursday of each month at the HCC Building, 3100 Main Street. Such meetings may be recessed from day to day until the completion of business. When determined necessary and for the convenience of Board members, the Board Chair may change the date, time, or location of a regular meeting with proper notice.  [See Board Bylaws, Article G, Section 3] |
| **SPECIAL OR EMERGENCY MEETINGS** | The Board Chair shall call a special meeting at the Board Chair's discretion, or by the independent requests of three (3) members of the Board who must call for the meeting in writing, specifying the date, time, place, and purpose of the meeting. Special meetings must be duly posted. [See Board Bylaws, Article G, Section 10] |
| | The Board Chair shall call an emergency meeting when it is determined by the Board Chair, or by the independent requests of three (3) members of the Board that an emergency or urgent public necessity, as defined by law, warrants the meeting. Emergency meetings must be duly posted. |
| **AGENDA PREPARATION** | At the direction of the Board Chair, the Chancellor shall prepare and present an agenda at least seven (7) calendar days prior to the regular Board meeting, having followed the agenda preparation process established by the Board.   [See Board Bylaws, Article G, Section 7] |
| **SUBMISSION OF TOPICS** | An item shall be added to the agenda by the written request of three (3) Board members submitted to the Chancellor or Board Chair at least seven (7) days prior to the meeting. |
| | Either the Board Chair or the Chancellor, at his or her discretion, may pull any item noticed for discussion and/or action from the agenda without further action by the Board unless that item has been added by the written request of three (3) Board members, in accordance with the procedures outlined above.[See Board Bylaws, Article G, Section 7] |
| **CONSENT AGENDA** | When the agenda is prepared, the Board Chair shall determine items, if any, that qualify to be placed on the consent agenda.  A consent agenda shall include items of a routine and/or recurring nature, as well as committee recommendations, grouped together under one action item. |
| | For each item listed as part of a consent agenda, the Board shall be furnished with background material.  All such items shall be act- |

ed upon by one vote without separate discussion, unless a Board member requests that an item be withdrawn for individual consideration. The remaining items shall be adopted under a single motion and vote.

**NOTICE TO MEMBERS**   Members of the Board shall be given notice of regular and special meetings at least 72 hours prior to the scheduled time of the meeting and at least two hours prior to the time of an emergency meeting.

**CLOSED MEETING**   Notice of all meetings shall provide for the possibility of a closed meeting during an open meeting, as provided by law. The Board may conduct a closed meeting when the agenda subject is one that may properly be discussed in closed meeting.

Trustees, employees, and agents of the College District shall not divulge to any person the substance of matters discussed at any closed meeting, except as otherwise required or allowed by law. Closed meetings shall be held as allowed by law to have discussions and deliberations of College matters that cannot be made public. A further objective would be to protect the attorney-client privilege recognized by law.

[See BDA and Board Bylaws, Article G, Section 11]

**ORDER OF BUSINESS**   The Chancellor and the Board Chair shall decide the order of business for meetings.

**RULES OF ORDER**   The Board shall observe the parliamentary procedures as found in *Robert's Rules of Order, Newly Revised*, except as otherwise provided in Board procedural rules or by law. Procedural rules may be suspended at any Board meeting by a two-thirds vote of the entire membership of the Board.

**VOTING**   Voting shall be by voice vote or show of hands, as directed by the Board Chair. Each member's vote, or failure to vote, shall be recorded by name. Only members present in person may vote. Absent members may listen to the proceedings by electronic media, but may not vote on the proceedings. No proxy votes shall be allowed. Other than situations in which a two-thirds vote is required, a majority vote of the total membership of the Board will be required in order for the Board to act. [See Board Bylaws, Article G, Section 5]

**MINUTES**   The Board shall prepare and keep minutes and/or make a tape recording of each open meeting. The minutes and tapes are public records and shall be available for public inspection and copying upon request to Board Services. Any person in attendance can make an audio or video recording of any or all of an open meeting, subject to reasonable rules adopted by the Board to maintain order. [See Board Bylaws, Article G, Section 9]

**DISCUSSIONS AND LIMITATION**

Discussions shall be addressed to the Board Chair and then the entire membership. Discussion shall be directed solely to the business currently under deliberation, and the Board Chair shall halt discussion that does not apply to the business before the Board.

The Board Chair shall also halt discussion if the Board has agreed to a time limitation for discussion of an item, and that time limit has expired. Aside from these limitations, the Board Chair shall not interfere with debate so long as members wish to address themselves to an item under consideration.

Exhibit C

STATE OF TEXAS      §
                            §

COUNTY OF HARRIS    §

## DECLARATION OF FACTS

My name is Eva Loredo, I am over 18 years of age, and my address is Houston Community College, care of Board Services, 3100 Main St., Houston, TX. 77002. I am the Chair of the Board of Trustees ("Board") of the Houston Community College System ("College") and have held that position throughout the 2017 calendar year. I presided over each meeting of the Board in September and October of 2017 where a trustee participated in a meeting by videoconference. I declare under penalty of perjury that the facts in paragraph 19 of the foregoing pleading are true and correct.

Executed in Harris County, State of Texas, on the 17th day of November, 2017.

_____

Eva Loredo

Declarant

EXHIBIT 6

Case No. 201767357

WILSON, DAVID BUREN

vs.

HOUSTON COMMUNITY COLLEGE SYST

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

270th      JUDICIAL DISTRICT

## DOCKET CONTROL ORDER

The following docket control order shall apply to this case unless modified by the court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1. **10/08/18**   **JOINDER.**  All parties must be added and served, whether by amendment or third party practice, by this date.  THE PARTY CAUSING THE JOINDER SHALL PROVIDE A COPY OF THIS DOCKET CONTROL ORDER AT THE TIME OF SERVICE.

2.   **EXPERT WITNESS DESIGNATION.**   Expert witness designations are required and must be served by the following dates.    The designation must include the information listed in Rule 194.2(f).    Failure to timely respond will be governed by Rule 193.6.
(a)   Experts for parties seeking affirmative relief.
(b)   All other experts.

3.   **STATUS CONFERENCE.**   Parties shall be prepared to discuss all aspects of the case, including ADR, with the court on this date.    TIME:
Failure to appear will be grounds for dismissal for want of prosecution.

4.   **DISCOVERY LIMITATIONS.**  The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
(a)   Total hours per side for oral depositions.
(b)   Number of interrogatories that may be served by each party on any other party.

5.   **ALTERNATIVE DISPUTE RESOLUTION.**
(a)   By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR.  If no agreement or objection is filed, the court may sign an ADR order.
(b) **12/24/18**   ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.   **DISCOVERY PERIOD ENDS.**    All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement.  Incomplete discovery will not delay the trial.

7.   **DISPOSITIVE MOTIONS AND PLEAS.**   Must be heard by oral hearing or submission.
(a) **11/07/18**   If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.
(b) **12/07/18**   Summary judgment motions not subject to an interlocutory appeal must be heard by this date.
(c)   Rule 166a(i) motions may not be heard before this date.

8.   **CHALLENGES TO EXPERT TESTIMONY.**  All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9. **12/07/18**   **PLEADINGS.**   All amendments and supplements must be filed by this date.   This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.
Parties shall be prepared to discuss all aspects of trial with the court on this date.
TIME:                Failure to appear will be grounds for dismissal for want of prosecution.

11. **01/07/19**   **TRIAL.** If not assigned by the second Friday following this date, the case will be reset.

SIGNED

ARTURO G. MICHEL
3200 SOUTHWEST FWY STE 2000
HOUSTON TX 77027-7554

14009440

2

BRENT GAMBLE
Judge, 270TH DISTRICT COURT
Date Generated 02/05/2018

JCVO02D
rev.10272014

EXHIBIT 7

Cause No. 201767357

WILSON, DAVID BUREN                    IN THE DISTRICT COURTS OF

V.                                     HARRIS COUNTY, TEXAS

HOUSTON COMMUNITY COLLEGE SYSTEMS      270 JUDICIAL DISTRICT


TRANSFER ORDER

It is ORDERED that the Harris County District Clerk shall NOT transfer the above styled and numbered cause from the 270 District Court to the 215 District Court.


SIGNED Wednesday, October 11, 2017

_[signature]_

HON. SYLVIA A. MATTHEWS
ADMINISTRATIVE JUDGE
CIVIL TRIAL DIVISION


Attraction Cause Number 201137943

WILSON, DAVID BUREN

v.

AUSTIN, BRUCE A

File Court 215

JUDGMENT DATE:                    JUDGMENT TYPE:
          CASE TYPE: OTHER CIVIL

Unofficial Copy Office of Chris Daniel District Clerk

EXHIBIT 8

**HCDistrictclerk.com**       WILSON, DAVID BUREN vs. HOUSTON COMMUNITY       3/8/2018
                              COLLEGE SYSTEMS
                              Cause: 201767357        CDI: 7      Court: 270

## APPEALS
No Appeals found.

## COST STATMENTS
No Cost Statments found.

## TRANSFERS
No Transfers found.

## POST TRIAL WRITS
No Post Trial Writs found.

## ABSTRACTS
No Abstracts found.

## NOTICES
No Notices found.

## SUMMARY

### CASE DETAILS

| | | | |
|---|---|---|---|
| **File Date** | 10/10/2017 | | |
| **Case (Cause) Location** | Civil Intake 1st Floor | | |
| **Case (Cause) Status** | Ready Docket | | |
| **Case (Cause) Type** | OTHER CIVIL | | |
| **Next/Last Setting Date** | 1/7/2019 | | |
| **Jury Fee Paid Date** | N/A | | |

### CURRENT PRESIDING JUDGE

| | |
|---|---|
| **Court** | 270th |
| **Address** | 201 CAROLINE (Floor: 13) HOUSTON, TX 77002 Phone:7133686400 |
| **JudgeName** | BRENT GAMBLE |
| **Court Type** | Civil |

## ACTIVE PARTIES

| Name | Type | Post Jdgm | Attorney |
|---|---|---|---|
| WILSON, DAVID BUREN | PLAINTIFF - CIVIL | | GROSS, KEITH ALEXANDER |
| HOUSTON COMMUNITY COLLEGE SYSTEMS | DEFENDANT - CIVIL | | MICHEL, ARTURO G. |
| LOREDO, EVA (TRUSTEE AND CHAIR) | DEFENDANT - CIVIL | | MICHEL, ARTURO G. |
| EVANS-SHABAZZ, CAROLYN (TRUSTEE AND VICE CHAIR) | DEFENDANT - CIVIL | | MICHEL, ARTURO G. |
| HANSEN, JOHN (TRUSTEE) | DEFENDANT - CIVIL | | MICHEL, ARTURO G. |
| TAMEZ, ADRIANA (TRUSTEE) | DEFENDANT - CIVIL | | MICHEL, |

| | | |
|---|---|---|
| | | ARTURO G. |
| GLASER, ROBERT (TRUSTEE) | DEFENDANT - CIVIL | MICHEL, ARTURO G. |
| SANE, NEEETA (TRUSTEE) | DEFENDANT - CIVIL | MICHEL, ARTURO G. |
| OLIVER, CHRISTOPHER (TRUSTEE) | DEFENDANT - CIVIL | MICHEL, ARTURO G. |
| CAPO, ZEPH (TRUSTEE) | DEFENDANT - CIVIL | MICHEL, ARTURO G. |
| STALLWORTH, PRETTA VANDIBLE (TRUSTEE, VICE CHAIR) | DEFENDANT - CIVIL | |

## INACTIVE PARTIES
No inactive parties found.

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|---|---|---|---|---|---|---|---|
| 2/7/2018 | FIRST AMENDED ORIGINAL PETITION | | | 0 | | GROSS, KEITH ALEXANDER | WILSON, DAVID BUREN |
| 2/7/2018 | DOCKET CONTROL/PRETRIAL ORDER SIGNED | 2/7/2018 | | 4 | | | |
| 2/5/2018 | DESIGNATED TRIAL READY | | | 0 | | | |
| 11/20/2017 | FIRST AMENDED ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | GLASER, ROBERT (TRUSTEE) |
| 11/20/2017 | FIRST AMENDED ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | TAMEZ, ADRIANA (TRUSTEE) |
| 11/20/2017 | FIRST AMENDED ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | HANSEN, JOHN (TRUSTEE) |
| 11/20/2017 | FIRST AMENDED ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | SANE, NEEETA (TRUSTEE) |
| 11/20/2017 | FIRST AMENDED ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | LOREDO, EVA (TRUSTEE AND CHAIR) |
| 11/20/2017 | FIRST AMENDED ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | HOUSTON COMMUNITY COLLEGE SYSTEMS |
| 11/20/2017 | FIRST AMENDED ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | CAPO, ZEPH (TRUSTEE) |
| 11/20/2017 | FIRST AMENDED ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | EVANS-SHABAZZ, CAROLYN (TRUSTEE AND VICE CHAIR) |
| 11/20/2017 | FIRST AMENDED ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | OLIVER, CHRISTOPHER (TRUSTEE) |
| 11/17/2017 | ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | GLASER, ROBERT (TRUSTEE) |
| 11/17/2017 | ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO G. | TAMEZ, ADRIANA (TRUSTEE) |
| 11/17/2017 | ANSWER ORIGINAL PETITION | | | 0 | | MICHEL, ARTURO | OLIVER, |

|  |  |  |  | G. | CHRISTOPHER (TRUSTEE) |
| 11/17/2017 | ANSWER ORIGINAL PETITION |  | 0 | MICHEL, ARTURO G. | SANE, NEEETA (TRUSTEE) |
| 11/17/2017 | ANSWER ORIGINAL PETITION |  | 0 | MICHEL, ARTURO G. | HANSEN, JOHN (TRUSTEE) |
| 11/17/2017 | ANSWER ORIGINAL PETITION |  | 0 | MICHEL, ARTURO G. | HOUSTON COMMUNITY COLLEGE SYSTEMS |
| 11/17/2017 | ANSWER ORIGINAL PETITION |  | 0 | MICHEL, ARTURO G. | CAPO, ZEPH (TRUSTEE) |
| 11/17/2017 | ANSWER ORIGINAL PETITION |  | 0 | MICHEL, ARTURO G. | EVANS-SHABAZZ, CAROLYN (TRUSTEE AND VICE CHAIR) |
| 11/17/2017 | ANSWER ORIGINAL PETITION |  | 0 | MICHEL, ARTURO G. | LOREDO, EVA (TRUSTEE AND CHAIR) |
| 10/11/2017 | ORDER SIGNED DENYING TRANSFER OF CASE TO ANOTHER DIST COURT | 10/11/2017 | 1 |  |  |
| 10/10/2017 | ORIGINAL PETITION |  | 0 | GROSS, KEITH ALEXANDER | WILSON, DAVID BUREN |

## SETTINGS

| Date | Court | Post Jdgm | Docket Type | Reason | Results | Comments | Requesting Party |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 12/01/2017 09:00 AM | 270 |  | Law Day Docket | PLEA TO JURISDICTION (TRCP 120A) | Passed | PER ELSA NTC 11/29 | MICHEL, ARTURO G. |
| 3/02/2018 09:00 AM | 270 |  | Law Day Docket | PLEA TO JURISDICTION (TRCP 120A) | Passed | FAILURE TO FILE N.O.H WITH COURT | MICHEL, ARTURO G. |
| 1/07/2019 12:00 AM | 270 |  | Trial Setting | Trial on Merits |  |  |  |

## SERVICES

| Type | Status | Instrument | Person | Requested | Issued | Served | Returned | Received | Tracking | Deliver To |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| CITATION | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | ORIGINAL PETITION | LOREDO, EVA (TRUSTEE AND CHAIR) | 10/19/2017 | 10/25/2017 |  |  |  | 73428856 | ATTORNEY PICK-UP |
| CITATION | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | ORIGINAL PETITION | EVANS-SHABAZZ, CAROLYN (TRUSTEE AND VICE CHAIR) | 10/19/2017 | 10/25/2017 |  |  |  | 73428857 | ATTORNEY PICK-UP |
| CITATION | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | ORIGINAL PETITION | HANSEN, JOHN (TRUSTEE) | 10/19/2017 | 10/25/2017 |  |  |  | 73428858 | ATTORNEY PICK-UP |
| CITATION | SERVICE ISSUED/IN POSSESSION | ORIGINAL PETITION | TAMEZ, ADRIANA (TRUSTEE) | 10/19/2017 | 10/25/2017 |  |  |  | 73428859 | ATTORNEY PICK-UP |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | OF SERVING AGENCY | | | | | | | |
| CITATION | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | ORIGINAL PETITION | GLASER, ROBERT (TRUSTEE) | 10/19/2017 | 10/25/2017 | | 73428860 | ATTORNEY PICK-UP |
| CITATION | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | ORIGINAL PETITION | SANE, NEEETA (TRUSTEE) | 10/19/2017 | 10/25/2017 | | 73428861 | ATTORNEY PICK-UP |
| CITATION | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | ORIGINAL PETITION | OLIVER, CHRISTOPHER (TRUSTEE) | 10/19/2017 | 10/25/2017 | | 73428862 | ATTORNEY PICK-UP |
| CITATION | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | ORIGINAL PETITION | CAPO, ZEPH (TRUSTEE) | 10/19/2017 | 10/25/2017 | | 73428863 | ATTORNEY PICK-UP |

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|---|---|---|---|---|
| 78936018 | Defendants Corrected Second Amended Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer | | 03/08/2018 | 15 |
| -> 78936019 | Exhibit A | | 03/08/2018 | 9 |
| -> 78936020 | Exhibit B | | 03/08/2018 | 4 |
| -> 78936021 | Exhibit C | | 03/08/2018 | 2 |
| 78922491 | Defendants Second Amended Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer | | 03/07/2018 | 15 |
| 78876469 | Notice of Intent to take Oral Deposition of Adriana Tamez | | 03/05/2018 | 2 |
| 78637049 | Plaintiff's Response to defendant's Motion to Consolidate | | 02/16/2018 | 3 |
| -> 78637050 | Exhibit 01 | | 02/16/2018 | 1 |
| -> 78637051 | Exhibit 02 | | 02/16/2018 | 2 |
| -> 78637052 | Exhibit 03 | | 02/16/2018 | 2 |
| -> 78637053 | Proposed Order | | 02/16/2018 | 1 |
| 78610686 | Defendants' Motion to Consolidate | | 02/14/2018 | 5 |
| 78610703 | Proposed Order on Motion to Consolidate | | 02/14/2018 | 1 |
| 78508640 | Plaintiff's First Amended Original Petition | | 02/07/2018 | 11 |
| -> 78508641 | Exhibit 01 | | 02/07/2018 | 2 |
| 78508642 | Plaintiff's Request for Disclosures, Interrogatories, and Request for Production to Houston Community College | | 02/07/2018 | 8 |
| 78511105 | DOCKET CONTROL/PRETRIAL ORDER SIGNED | | 02/07/2018 | 4 |
| 77627419 | Plaintiff's Objections and Responses to defendants' Plea to the Jurisdiction and Motion to Dismiss | | 11/30/2017 | 9 |
| -> 77627420 | Exhibit 01 | | 11/30/2017 | 37 |
| 77513749 | Defendants First Amended Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original Answer | | 11/20/2017 | 14 |
| -> 77513750 | Exhibit A | | 11/20/2017 | 9 |

| | | | |
|---|---|---|---|
| -> 77513751 | Exhibit B | 11/20/2017 | 4 |
| -> 77513752 | Exhibit C | 11/20/2017 | 2 |
| 77488203 | Defendants' Plea to the Jurisdiction, Motion to Dismiss, Special Exceptions, and Original answer | 11/17/2017 | 14 |
| -> 77488204 | Exhibit A | 11/17/2017 | 9 |
| -> 77488205 | Exhibit B | 11/17/2017 | 4 |
| -> 77488206 | Exhibit C | 11/17/2017 | 2 |
| 77436992 | Civil Process Pick-Up Form | 10/25/2017 | 1 |
| 77086512 | CIVIL PROCESS REQUEST | 10/19/2017 | 4 |
| 76998067 | ORDER SIGNED DENYING TRANSFER OF CASE TO ANOTHER DIST COURT | 10/11/2017 | 1 |
| 76964518 | PLANTIFFS ORIGINAL PETITION | 10/10/2017 | 4 |



EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID BUREN WILSON, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| HOUSTON COMMUNITY COLLEGE | § | |
| SYSTEM, CAROLYN EVANS-SHABAZZ, | § | |
| CHAIR, PRETTA VANDIBLE | § | C.A. No.:_____ |
| STALLWORTH, VICE CHAIR, ZEPH | § | |
| CAPO, SECRETARY, JOHN HANSEN, | § | |
| TRUSTEE, ADRIANA TAMEZ, | § | |
| TRUSTEE, ROBERT GLASER, TRUSTEE, | § | |
| NEETA SANE, TRUSTEE, and EVA | § | |
| LOREDO, TRUSTEE | § | |
| | § | |
| Defendants. | § | |

## <u>LIST OF PARTIES AND COUNSEL</u>

<u>Plaintiff, David Buren Wilson:</u>
Mr. Keith A. Gross
attnygross@aol.com
THE LAW OFFICE OF KEITH A. GROSS
250 Park Avenue
League City, Texas 77573
Telephone: (832) 932-5970
Facsimile: (832)932-5688

<u>Defendants, Houston Community College System, Trustees Dr. Carolyn Evans-Shabazz, Pretta Vandible Stallworth, Zeph Capo, Dr. John Hansen, Dr. Adriana Tamez, Robert Glaser, Neeta Sane, and Eva Loredo:</u>
Arturo G. Michel
amichel@thompsonhorton.com
Stephanie A. Hamm
shamm@thompsonhorton.com
THOMPSON & HORTON LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6767
Facsimile: (713) 583-888
4836-0413-4494, v. 1