# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-20237

United States Court of Appeals
Fifth Circuit
**FILED**
April 7, 2020
Lyle W. Cayce
Clerk

United States Courts
Southern District of Texas
FILED
*July 23, 2020*
David J. Bradley, Clerk of Court

DAVID BUREN WILSON,

    Plaintiff - Appellant

v.

HOUSTON COMMUNITY COLLEGE SYSTEM,

    Defendant - Appellee
    4:18-CV-744

Appeal from the United States District Court
for the Southern District of Texas

---

Before DAVIS, SMITH, and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

    Plaintiff David Wilson appeals the district court's judgment dismissing his 42 U.S.C. § 1983 complaint for lack of subject matter jurisdiction under Rule 12(b)(1). Wilson, a former trustee of the Board of Trustees ("Board") of Defendant Houston Community College System ("HCC"), asserts that HCC violated his First Amendment right to free speech when the Board publicly censured him. Because, under our precedent, Wilson's allegations establish standing and state a claim for relief under § 1983 for a First Amendment violation, we REVERSE the district court's judgment and REMAND Wilson's § 1983 claim for damages for further proceedings. As the parties agree, however, Wilson's claims for declaratory and injunctive relief are moot, as Wilson is no longer a Board trustee. Therefore, we GRANT HCC's motion for

partial dismissal of Wilson's appeal and instruct the district court to dismiss Wilson's claims for declaratory and injunctive relief after remand.

## I. BACKGROUND

HCC is a public community college district[1] that operates community colleges throughout the greater Houston area.[2] HCC is run by its Board, which is made up of nine trustees.[3] Each trustee is elected by the public from single-member districts to serve a six-year term without remuneration.[4] Through the resolutions and orders it passes, the Board shapes HCC's policy, enhances the institution's public image, and preserves institutional independence.[5] On November 5, 2013, Wilson was elected to the Board as the trustee for HCC District 2.

Beginning in 2017, Wilson voiced concern that trustees were violating the Board's bylaws and not acting in the best interests of HCC. After disagreeing with HCC's decision to fund a campus in Qatar, Wilson made his complaints public by arranging robocalls regarding the Board's actions and interviewing with a local radio station. When HCC allowed one trustee to vote via videoconference, Wilson contended that the bylaws prohibited such voting. He subsequently filed a lawsuit against HCC and the individual Board trustees in state court seeking a declaratory judgment that the videoconference vote was illegal under the bylaws and requesting an injunction. After the Board allegedly excluded Wilson from an executive session, he filed a second lawsuit

---

[1] Under Texas law, a community college district is a "school district," and a school district is considered a "governmental agency," along with municipalities and other political subdivisions of the state. TEX. LOC. GOV'T. CODE ANN. §§ 271.003(4), (9).
[2] TEX. EDUC. CODE ANN. §§ 130.0011, 130.182.
[3] *Id.* § 130.084.
[4] *Id.* § 130.082.
[5] *Id.* § 51.352.

against HCC and the trustees in state court asserting that his exclusion was unlawful and again seeking declaratory and injunctive relief.[6]

Additionally, Wilson hired a private investigator to confirm that one of the trustees did in fact reside within the district in which she was elected. He maintained a website where he published his concerns, referring to his fellow trustees and HCC by name. Wilson also hired a private investigator to investigate HCC.

On January 18, 2018, the Board voted in a regularly-scheduled session to adopt a resolution publicly censuring Wilson for his actions. In the censure resolution, the Board chastised Wilson for acting in a manner "not consistent with the best interests of the College or the Board, and in violation of the Board Bylaws Code of Conduct." The censure, the Board emphasized, was the "highest level of sanction available," as Wilson was elected and could not be removed. The Board directed Wilson to "immediately cease and desist from all inappropriate conduct" and warned that "any repeat of improper behavior by Mr. Wilson will constitute grounds for further disciplinary action by the Board."[7]

Upon being censured, Wilson amended his first state-court petition to include claims against HCC and the trustees under 42 U.S.C. § 1983, asserting that the censure violated his First Amendment right to free speech and his Fourteenth Amendment right to equal protection. Wilson asserted that the Board's bylaws were overly broad and unconstitutional as applied to him and were subject to "strict scrutiny" review. He therefore requested that HCC and

---

[6] Wilson ultimately amended his first lawsuit to include the claims asserted in his second lawsuit and voluntarily dismissed the second lawsuit.

[7] The Board also resolved to impose the following sanctions as part of its censure: (1) Wilson would be ineligible for election to Board officer positions for the 2018 calendar year, (2) Wilson would be ineligible for reimbursement for any college-related travel for the 2017-18 college fiscal year, and (3) Wilson's requests for access to the funds in his Board account for community affairs would require Board approval.

3

the trustees be enjoined from enforcing the censure. Wilson also sought $10,000 in damages for mental anguish, $10,000 in punitive damages, and reasonable attorney's fees.

HCC and the trustees subsequently removed Wilson's state-court proceeding to federal district court on the basis of federal question jurisdiction. Wilson filed a motion for remand, which the district court denied. Wilson thereafter amended his complaint naming only HCC as a defendant and dropping his claims against the individual trustees.

HCC moved to dismiss Wilson's suit pursuant to Rule 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim. The district court granted HCC's motion to dismiss under Rule 12(b)(1) for lack of jurisdiction, determining that Wilson could not demonstrate an injury in fact and therefore lacked Article III standing. Wilson timely appealed.

In August 2019, Wilson resigned as trustee for HCC's District 2. In the November 2019 election, Wilson ran as a candidate in the race for trustee of HCC's District 1. He was ultimately defeated in the December 2019 run-off election.

## II. DISCUSSION

### A. Standard of Review

This court's review of dismissals under Rule 12(b)(1) for lack of jurisdiction and dismissals under Rule 12(b)(6) for failure to state a claim is de novo.[8] When a party files multiple Rule 12 motions, we must consider the Rule 12(b)(1) jurisdictional attack before considering the Rule 12(b)(6) merits challenge.[9] The party responding to the 12(b)(1) motion bears the burden of

---

[8] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).
[9] *Id.*

proof that subject matter jurisdiction exists.[10] A district court may find a lack of subject matter jurisdiction on either: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[11]

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

## B. Standing

Under Article III of the Constitution, federal courts can resolve only "cases" and "controversies."[14] In line with this requirement, a plaintiff must have standing—that is, a showing of (1) an injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by the court.[15] An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[16] In the context of free speech, "the governmental action need not have a direct effect on the exercise of First Amendment rights . . . [but] must have caused or must threaten to cause a direct injury to the plaintiffs."[17]

---

[10] *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).
[11] *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).
[12] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[13] *Iqbal*, 556 U.S. at 678.
[14] U.S. CONST. art. III, § 2.
[15] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).
[16] *Id.* (cleaned up).
[17] *Meese v. Keene*, 481 U.S. 465, 472 (1987).

In dismissing Wilson's complaint under Rule 12(b)(1), the district court, relying on the Tenth Circuit's decision in *Phelan v. Laramie County Community College Board of Trustees*, held that Wilson had not suffered any injury in fact.[18] Specifically, the district court concluded that Wilson could not show an invasion of a legally protected interest because the Board's censure did not forbid Wilson from performing his official duties or speaking publicly.[19] The district court erred in relying on *Phelan* to determine that Wilson lacked standing, however, because the *Phelan* court held that the plaintiff in fact *had standing*, noting that the plaintiff had alleged the Board's censure tarnished her reputation.[20]

In this case, Wilson alleges that the censure was issued to punish him for exercising his free speech rights and caused him mental anguish. Under our precedent, Wilson's allegation of retaliatory censure is enough to establish an injury in fact.[21] Additionally, the Supreme Court has held that a free speech violation giving rise to a reputational injury is an injury in fact.[22] A censure is defined as an "official reprimand or condemnation; an authoritative expression

---

[18] *Wilson v. Houston Cmty. Coll. Sys.*, No. 4:18-CV-00744, 2019 WL 1317797, at *3 (S.D. Tex. Mar. 22, 2019); *see also Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243 (10th Cir. 2000).

[19] *Wilson*, 2019 WL 1317797 at *3.

[20] 235 F.3d at 1247 n.1.

[21] *See Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999) (noting that "at least twice, this court has granted relief to elected officials claiming First Amendment retaliation") (citations omitted). Our sister courts agree that a retaliatory action resulting in a chilling of free speech constitutes an injury in fact. *See, e.g., Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) ("[T]he harm suffered is the adverse consequences which flow from the . . . constitutionally protected action."); *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) ("The injury asserted is the retaliatory accusation's chilling effect on [plaintiff's] First Amendment rights . . . . We hold that [plaintiff's] failure to demonstrate a more substantial injury does not nullify his retaliation claim."). *See also Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 139 (1994) (holding, in commercial speech case, that state board of accountancy's censure of accountant violated First Amendment, thereby assuming that a censure alone constitutes an injury in fact).

[22] *Meese v. Keene*, 481 U.S. 465, 473 (1987).

6

of disapproval or blame; reproach."[23] Wilson alleges that a public censure has caused him mental anguish. That injury stemming from his censure, like a reputational injury, is enough to confer standing.[24]

Though not precisely a matter of standing, Wilson's claims for declaratory and injunctive relief run up against a jurisdictional problem. Wilson is no longer a Board trustee; consequently, the HCC's Code of Conduct no longer governs him. Therefore, his claims seeking declaratory and injunctive relief that the Code of Conduct, and as applied to him through the resolution of censure, is an unconstitutional prior restraint are moot. We grant HCC's motion for partial dismissal of Wilson's appeal of those claims and instruct the district court to dismiss those claims as moot after remand. Wilson's claim for damages continues to present a live controversy.[25]

## C. First Amendment Claim

As we have noted, if "constitutional rights were violated, and if that violation 'caused actual damage,' then [the plaintiff] has 'stated a live claim under § 1983.'"[26] Wilson argues that the censure he suffered is an actionable First Amendment claim under § 1983. Although the district court did not technically reach this issue, having dismissed the case for lack of standing under Rule 12(b)(1) and not for failure to state a claim under Rule 12(b)(6), it

---

[23] *Censure*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[24] In *Sims v. Young*, 556 F.2d 732, 734 (5th Cir. 1977), a firefighter brought a First Amendment claim under § 1983 against city officials after being suspended for twenty days. We held that the plaintiff had satisfied the injury-in-fact requirement of standing despite the fact he had since been reinstated because the suspension remained "a blot on his record." *Id.* A censure, like a suspension, can be characterized as a "blot."

[25] *See Boag v. MacDougall*, 454 U.S. 364 (1975) (per curiam) (although respondent complaining of solitary confinement had since been transferred, "the transfer did not moot the damages claim"); *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 (5th Cir. 2009) (claim for nominal damages avoids mootness); *Pederson v. La. State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000) (graduation mooted claims for injunctive relief, not damages).

[26] *Wilson v. Birnberg*, 667 F.3d 591, 595–96 (5th Cir. 2012) (quoting *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir. 1992)).

7

effectively concluded that Wilson's censure did not give rise to a First Amendment claim.[27] The district court followed *Phelan*, which dismissed the plaintiff's claim on summary judgment, determining that the censure did not infringe on the plaintiff's free speech rights because the censure did not punish her for exercising those rights nor did it deter her free speech.[28] Wilson argues that the district court improperly endorsed the Tenth Circuit's decision in *Phelan*, ignoring Fifth Circuit precedent and failing to recognize the protection afforded to an elected official's political speech. We agree.

The Supreme Court has long stressed the importance of allowing elected officials to speak on matters of public concern.[29] We have echoed this principle in our decisions, emphasizing that "[t]he role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance."[30] As a result, and as described below, this court has held that censures of publicly elected officials can be a cognizable injury under the First Amendment.

We first visited whether a censure can constitute a First Amendment violation in *Scott v. Flowers*.[31] There, a plaintiff was elected to a four-year term as a justice of the peace in Texas.[32] Concerned that the state was dismissing the majority of traffic-offense ticket appeals, the judge published an "open

---

[27] *See Wilson v. Houston Cmty. Coll. Sys.*, No. 4:18-CV-00744, 2019 WL 1317797, at *3 (S.D. Tex. Mar. 22, 2019) ("[The Tenth Circuit in *Phelan*] has established that a majority's decision to censure a member of a political body does not give rise to a First Amendment violation claim. While not binding, the court's reasoning in *Phelan*, is instructive here." (internal citation omitted)).

[28] *Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees*, 235 F.3d 1243, 1247 (10th Cir. 2000).

[29] *See, e.g., Bond v. Floyd*, 385 U.S. 116, 135–36 (1966) ("The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy.").

[30] *Rangra v. Brown*, 566 F.3d 515, 524 (5th Cir.) (citation omitted), *dismissed as moot en banc*, 584 F.3d 206 (5th Cir. 2009).

[31] 910 F.2d 201 (5th Cir. 1990).

[32] *Id.* at 203.

8

letter" to county officials criticizing the district attorney's office and county court.[33] The Texas Commission on Judicial Conduct ("Commission") subsequently issued a formal, public reprimand to the judge for being "insensitive" in his statement, thereby "cast[ing] public discredit upon the judiciary."[34] The reprimand was a "warning," cautioning him to be "more restrained and temperate" in the future.[35] The judge filed suit under § 1983, arguing the public censure violated his First Amendment right of free speech.[36]

This court applied the Supreme Court's two-step inquiry to assess public employees' claims of First Amendment violations set forth in *Pickering v. Board of Education*.[37] First, we determined that the judge's speech addressed a matter of public concern and therefore was protected speech.[38] Second, we balanced the judge's free speech rights against the Commission's countervailing interest in promoting the efficient performance of its normal functions.[39] We underscored that the judge was "not hired by a governmental employer. Instead, he was an elected official, chosen directly by the voters of his justice precinct, and, at least in ordinary circumstances, removable only by them."[40] The state consequently could not justify its reprimand "on the ground that it was necessary to preserve coworker harmony or office discipline."[41] While we recognized that the state may proscribe the speech of elected judges more so than other elected officials, the censure touched upon "core first

---

[33] *Id.* at 204.
[34] *Id.*
[35] *Id.* at 205 n.6.
[36] *Id.* at 205.
[37] *Id.* at 210; *see Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).
[38] *Id.* at 211.
[39] *Id.*
[40] *Id.* at 212.
[41] *Id.*

amendment values."[42] We concluded that the state's "concededly legitimate interest in protecting the efficiency and impartiality of the state judicial system" could not outweigh the judge's First Amendment rights, and we expunged the censure.[43]

In *Colson v. Grohman*, this court reiterated there is "no doubt" that formal reprimands are actionable under § 1983.[44] Reaffirming *Scott*, we explained that "a formal reprimand, by its very nature, goes several steps beyond a criticism or accusation and even beyond a mere investigation."[45] "It is punitive in a way that mere criticisms, accusations, and investigations are not."[46]

We again held that elected officials are entitled to be free from retaliation for constitutionally protected speech in *Jenevein v. Willing*.[47] That case, like *Scott*, centered on the Commission's public censure of an elected judge, this time a state district court judge.[48] The judge had given a press conference and sent a mass email to explain that he was filing a complaint against a lawyer for comments made about him in pleadings and that he therefore had to recuse himself.[49]

Breaking from *Scott*, we held that the *Pickering* balancing test did not apply to *elected* employees of the state.[50] Instead, we adopted strict scrutiny to assess the government's regulation of an elected official's speech to his

---

[42] *Id.* (quoting *Morial v. Judiciary Comm'n of State of La.*, 565 F.2d 295, 301 (5th Cir. 1977)).
[43] *Id.* at 212–13.
[44] 174 F.3d 498, 512 (5th Cir. 1999).
[45] *Id.* at 512 n.7.
[46] *Id.* In *Colson*, by contrast, the court found that the plaintiff had failed to state a claim; she was "never arrested, indicted, or subjected to a recall election[,] [n]or was she formally reprimanded." *Id.* at 511 (internal footnote omitted).
[47] 493 F.3d 551 (5th Cir. 2007).
[48] *Id.* at 556.
[49] *Id.* at 553–55.
[50] *Id.* at 557–58.

constituency.⁵¹ Noting that a state's interest in suppressing the speech of an elected official is weak, we held that even though the order was "entered in good faith effort to pursue the public interest . . . [t]o the extent that the commission censured Judge Jenevein for the content of his speech, shutting down all communication between the Judge and his constituents, we reverse and remand with instructions to expunge that part of the order."⁵²

The above precedent establishes that a reprimand against an elected official for speech addressing a matter of public concern is an actionable First Amendment claim under § 1983. Here, the Board's censure of Wilson specifically noted it was punishing him for "criticizing other Board members for taking positions that differ from his own" concerning the Qatar campus, including robocalls, local press interviews, and a website. The censure also punished Wilson for filing suit alleging the Board was violating its bylaws. As we have previously held, "[R]eporting municipal corruption undoubtedly constitutes speech on a matter of public concern."⁵³ Therefore, we hold that Wilson has stated a claim against HCC under § 1983 in alleging that its Board violated his First Amendment right to free speech when it publicly censured him.

---

⁵¹ *Id.* at 558. In *Rangra v. Brown*, this court later clarified that the *Pickering* balancing test did not apply to elected officials' First Amendment retaliation claims, despite its earlier use in *Scott*, because of intervening Supreme Court precedent (specifically, *Republican Party of Minn. v. White*, 536 U.S. 765, 774–75 (2002)). 566 F.3d 515, 525 n.26 (5th Cir.), *dismissed as moot en banc*, 584 F.3d 206 (5th Cir. 2009). The court highlighted other instances in which strict scrutiny was used to protect free speech concerning public matters. *Id.* at 525 n.25.

⁵² *Jenevein*, 493 F.3d at 560–62.

⁵³ *Harmon v. Dall. Cty.*, 927 F.3d 884, 893 (5th Cir. 2019), *as revised* (July 9, 2019) (per curiam). *See also Lane v. Franks*, 573 U.S. 228, 241 (2014) ("[C]orruption in a public program and misuse of state funds [] obviously involve[] a matter of significant public concern."); *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006) ("Exposing governmental inefficiency and misconduct is a matter of considerable significance.").

HCC tries to distinguish *Scott* and *Jenevein*, arguing that the cases concerned judges, not local legislators. But the fact that these cases dealt with judges matters not. The *Jenevein* court emphasized that elected judges are, ultimately, "political actors"—if anything, judges are afforded *less* protection than legislators.[54] HCC also contends that, unlike here, the Texas Commission on Judicial Conduct could order judges to undergo additional education, suspend them, or remove them from office. Even if true, the Commission's censure did not draw upon such authority in either case.[55]

HCC also argues that it had a right to censure Wilson as part of its internal governance as a legislative body and that Wilson's First Amendment rights were not implicated. It cites to numerous cases from our sister circuits, purportedly supporting its argument. A close review of those cases, however, reveals that those cases either did *not* involve censures, or involved claims against only the individual members of a governing body (and not the governing body itself) who were entitled to assert legislative immunity. For example, *Blair v. Bethel School District* did not involve a public censure but a vote by a public school board to remove a fellow board member as vice president of the board.[56] *Zilich v. Longo* also did not concern a censure, but a city council

---

[54] 493 F.3d at 560. *See Scott v. Flowers,* 910 F.2d 201, 212 (5th Cir. 1990) ("[W]e have recognized that the state may restrict the speech of elected judges in ways that it may not restrict the speech of other elected officials.").

[55] HCC is correct that the additional measures taken against Wilson—(1) his ineligibility for election to Board officer positions, (2) his ineligibility for reimbursement for college-related travel, and (3) the required approval of Wilson's access to Board funds—do not violate his First Amendment rights. A board member is not entitled to be given a position as an officer. *See Rash-Aldridge v. Ramirez,* 96 F.3d 117, 119 (5th Cir. 1996) (per curiam) (a city council member did not have a First Amendment claim after the council removed her from a board following her public disagreement with the council majority). Second, nothing in state law or HCC's bylaws gives Wilson entitlement to funds absent approval. As for travel reimbursements, we have held that a failure to receive travel reimbursement is not an adverse employment action for a public employee's First Amendment retaliation claim. *Benningfield v. City of Houston,* 157 F.3d 369, 376 (5th Cir. 1998).

[56] 608 F.3d 540, 542 (9th Cir. 2010). The Ninth Circuit's decision in *Blair* that the school board was entitled to remove a board member from a titular position is consistent with

resolution declaring that a former council member had violated the residency requirement and a council ordinance authorizing suit to be filed to recover the former member's salary.[57] Consequently, these cases are inapposite.

The remainder of the cases relied upon by HCC involved claims against only the individual members of a governing body.[58] As we have noted, under Supreme Court precedent, absolute legislative immunity is a "doctrine[] that protect[s] individuals acting within the bounds of their official duties, not the governing bodies on which they serve."[59] "Thus, even if the actions of the [state agency's] members are legislative, rather than administrative, the [state agency] itself as a separate entity is not entitled to immunity for violation of the [plaintiff's] constitutional rights."[60] Wilson has filed his claims against only HCC, which is not entitled to legislative immunity from Wilson's § 1983 suit.

Lastly, HCC argues that Wilson's conclusory statements that he suffered emotional harm are insufficient support for mental anguish damages. "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[61] As explained, Wilson has alleged

---

our decision in *Rash-Aldridge* that an elected official does not have a fundamental right to an appointed leadership position. 96 F.3d at 119.

[57] 34 F.3d 359, 361 (6th Cir. 1994).

[58] *See Rangel v. Boehner*, 785 F.3d 19, 21 (D.C. Cir. 2015) (claim by United States congressman against fellow congressmen and other individuals for violating his constitutional rights in issuing "a punishment of censure"); *Whitener v. McWatters,* 112 F.3d 740, 741 (4th Cir. 1997) (claim by county board member against fellow board members for violating his First Amendment rights in censuring him for using abusive language); *Romero-Barcelo v. Hernandez-Agosto,* 75 F.3d 23, 34 (1st Cir. 1996) (claim by former governor of Puerto Rico against individual legislators for violating his constitutional rights during legislative hearings investigating governor's role in a political scandal).

[59] *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 133 (5th Cir. 1986); *see also Owen v. City of Independence, Missouri*, 445 U.S. 622, 657 (1980).

[60] *Minton*, 803 F.2d at 133.

[61] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). *See also* 5 Charles Alan Wright et al., FED. PRAC. &

a plausible violation of his First Amendment rights under § 1983. He contends that, stemming from the defendant's unlawful acts, he has suffered mental anguish that warrants $10,000 in damages.[62] Based on the allegations set forth in his pleadings, Wilson has alleged a plausible claim supporting mental anguish damages.[63]

### III. CONCLUSION

Based on the foregoing, we REVERSE the district court's judgment dismissing Wilson's complaint for lack of jurisdiction and REMAND Wilson's § 1983 claim for damages for further proceedings consistent with this opinion. Wilson's claims for declaratory and injunctive relief are moot, as Wilson is no longer a trustee on the Board of HCC. Therefore, we GRANT HCC's motion for partial dismissal of Wilson's appeal and instruct the district court to dismiss Wilson's claims for declaratory and injunctive relief after remand.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; MOTION FOR PARTIAL DISMISSAL GRANTED.

---

PROC. § 1202 (3d ed. 2019) ("[Rule 8(a)] requires the pleader to disclose adequate information regarding the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it.").

[62] Wilson will still need to support such a claim properly in order to prevail after remand. *See, e.g., Hitt v. Connell*, 301 F.3d 240, 250–51 (5th Cir. 2002) (detailing the evidence needed to support compensatory damages for mental anguish stemming from a § 1983 free speech jury verdict).

[63] Although Wilson also seeks $10,000 in punitive damages, punitive damages are not available against HCC. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270–71 (1981) (holding that municipalities and other government entities are immune from punitive damages under § 1983).